JAMES M. MALONEY (514252)
Attorney for Plaintiff
33 Bayview Avenue
Port Washington, New York 11050
Telephone: (516) 767-1395
Email: maritimelaw@nyu.edu

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
STEPHEN NUCCIO,

                              Plaintiff,

          - against -

NICOLE DUVÉ, in her official capacity as District
Attorney of the County of Saint Lawrence, New York

                        Defendant.

--------------------------------------------------------------------X

**CIVIL COMPLAINT**

7:13-CV-1556 (MAD/TWD)

Plaintiff, by his attorney, JAMES M. MALONEY, as and for his Complaint against the above-named Defendant, alleges:

**<u>PARTIES</u>**

1. At the commencement of this action and at all times hereinafter mentioned, Plaintiff was and is a natural person, a citizen of the United States, and owns, dwells, and resides in a private home (hereinafter, the "Home") that is geographically located within the State of New York, within the County of Saint Lawrence, and within this District.

2. At the commencement of this action and at all times hereinafter mentioned, Defendant was and is a natural person and was and is the District Attorney of the County of Saint Lawrence. She is sued herein in her official capacity only and not in her personal capacity.

3. The District Attorney of the County of Saint Lawrence was and is the person responsible for the actual past and potential future prosecution of Plaintiff under the criminal statutes challenged herein in the manner applied (i.e., as to simple possession in the Home).

## JURISDICTION AND VENUE

4. This action arises under the Constitution of the United States.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and has the power to render the declaratory judgment sought pursuant to the provisions of 28 U.S.C. §§ 2201-2202.  This action is brought against a person acting under color of state law pursuant to the provisions of 42 U.S.C. §  1983.

5. Venue is properly placed in this Court pursuant to 28 U.S.C. § 1391(b).

## GENERAL BACKGROUND

6. On or about May 8, 2012, Plaintiff possessed in the Home, in plain view on a display shelf, several devices known as nunchaku or "chuka sticks," each such device consisting of two lengths of a rigid material such as wood joined together by a cord, thong, rope, line, or chain, the possession of which is defined as a crime by sections 265.00 *et seq.* of the Penal Law of the State of New York, as more fully appears herein.

7. On or about May 8, 2012, a New York State police officer, Rachelle Foster (hereinafter, "Foster"), not a party to this action, together with other New York State police officers, arrived at the Home to arrest Plaintiff pursuant to a bench warrant, in connection with a criminal contempt allegation that is not related to this civil action.

8. On or about May 8, 2012, Foster, while inside the Home (which was occupied by Plaintiff and no one else), observed five pairs of nunchaku or "chuka sticks" on display on a display shelf outside Plaintiff's bedroom.

9. On or about May 8, 2012, New York State police officer Patrick Loveland, not a party to this action, seized the five pairs of nunchaku or "chuka sticks" found on the display shelf outside Plaintiff's bedroom and secured them into evidence.

10. On or about May 10, 2012, the People of the State of New York charged Plaintiff with criminal possession of a weapon in the fourth degree, a Class A misdemeanor defined at section 265.01 of the Penal Law of the State of New York, based solely on Plaintiff's simple possession of the five pairs of nunchaku or "chuka sticks" that were on display in the Home.

11. The aforementioned charge of criminal possession of a weapon in the fourth degree was based solely on the allegation of simple possession of the five pairs of nunchaku in the Home, and was not supported by any allegation(s) that Plaintiff had: (a) used any of the nunchaku in the commission of a crime; (b) carried or displayed any of the nunchaku in public; or (c) engaged in any other improper or prohibited conduct in connection with any of the nunchaku except for his simple possession of them within the Home, nor is any such conduct an element of the defined crime.

12. On or about June 25, 2013, Plaintiff was tried before a jury for the crimes of criminal contempt in the first degree (a felony), criminal contempt in the second degree (a misdemeanor), and the above-described charge of criminal possession of a weapon in the fourth degree.

13. On or about June 25, 2013, Plaintiff was found **not guilty** of the charges of criminal contempt in the first degree and criminal contempt in the second degree, which charges were based on the allegations that had, in turn, given rise to the issuance of the bench warrant and subsequent police entry into the Home that had occurred on May 8, 2012, as described in paragraph 7, above, and that had led to the discovery of the nunchaku in the Home by the police.

14. On or about June 25, 2013, Plaintiff was found **guilty** of the charge of criminal possession of a weapon in the fourth degree that was based solely on the simple possession of the five pairs of nunchaku in the Home that police had observed on display there on May 8, 2012.

15. Prior to the verdict of June 25, 2013, when Plaintiff was found guilty of the

-3-

misdemeanor of criminal possession of a weapon in the fourth degree, Plaintiff had never before been convicted of any crime, i.e., of any misdemeanor or felony.

16. As a consequence of his conviction for criminal possession of a weapon in the fourth degree and under the provisions of the Executive Law of the State of New York, Plaintiff was ordered to surrender a sample of his DNA to state and federal authorities, and Plaintiff did so, resulting in an irrevocable diminution in his personal privacy.

17. As a consequence of his conviction of the misdemeanor of criminal possession of a weapon in the fourth degree, Plaintiff has suffered and is expected to suffer a lasting and substantial diminution in his ability to earn a living.

## PLAINTIFF'S STANDING TO SUE

18. Plaintiff has never used a nunchaku to inflict harm or physical injury, to threaten anyone, or for any unlawful purpose beyond mere simple possession, and has used and kept nunchaku only for socially acceptable purposes such as developing physical dexterity, timing and coordination.

19. Because Plaintiff was charged with and convicted of a Class A misdemeanor for the simple possession of a nunchaku in the Home, Plaintiff must either: (1) forgo possession of any nunchaku within his own home in the State of New York; or (2) risk being the target of another prosecution.

20. Under New York Penal Law § 265.02, Plaintiff, having been convicted of a misdemeanor, now risks a felony prosecution if he were again to keep nunchaku in his home.

21. Plaintiff, who still wishes to possess nunchaku in his home, must choose between: (a) risking additional and more serious criminal prosecution, and (b) forgoing constitutionally

-4-

protected conduct (i.e., possessing nunchaku in his home for socially legitimate purposes including possible home defense) and is thus caught "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).

22. Under New York Penal Law §§ 265.00 through 265.01, New York's treatment of its citizens who have no previous criminal record, if found guilty of possessing nunchaku in their homes, "far from imposing a minor fine, threatens citizens with a year in prison," *District of Columbia v. Heller*, 554 U. S. 570, 634 (2008), and therefore renders this case or controversy far from *de minimis*.  Plaintiff is now subject to even more severe criminal penalties under New York Penal Law § 265.02 (a felony) should he ever possess nuncahku in the Home again, which he wishes to do.

23. Plaintiff accordingly has standing to seek declaratory judgment on the question of the constitutionality of those New York statutes that criminalize the simple possession of nunchaku within one's home.

24. Plaintiff is not requesting that this court overturn his conviction in state court, nor would the prospective declaration sought in this case invalidate Plaintiff's conviction, and therefore Plaintiff is not barred from bringing this action under the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), *see also Small v. Bud-K Worldwide, Inc.*, 895 F. Supp. 2d 438, 444 (E.D.N.Y. 2012).

## THE NUNCHAKU AND ITS REGULATION BY VARIOUS GOVERNMENTS

25. The nunchaku was originally a farm implement, and was developed at least as early as 1609 for use as a weapon on the island of Okinawa after an oppressive samurai "clan" of organized invaders (the "Satsuma Clan") disarmed the people there, imposed taxes, and engaged in other acts of dominion over the People of Okinawa.

26. The nunchaku had already been used as an "arm" or weapon for the common defense, by the citizens' militias of Okinawa, in defense against samurai invaders armed with swords and other weapons, well before the dates of the ratification of the United States Constitution and of the first ten amendments thereto.

27. The nunchaku, unlike most other weapons, including firearms, knives, swords and all other penetrating weapons, is capable of being used in a restrained manner such that an opponent may be subdued without resorting to the use of deadly physical force.

28. For the reasons stated in the foregoing paragraph, the nunchaku is used by many police departments within the United States.

29. The nunchaku, in comparison with most other arms, including firearms, is relatively safe and innocuous, such that a child or person untrained in the weapon's proper use would be unable to inflict serious injury upon him- or herself, either accidentally or intentionally.

30. Accordingly, nunchaku kept in the home, even if not secured in a safe or other secured location, are far less likely to be associated with accidental injury or fatality than are most other weapons or even common household objects such as kitchen knives and scissors.

31. No state in the United States other than New York has ever defined and prosecuted as a crime the simple possession of nunchaku within one's own home absent any intent element whatsoever and with no exemption whatsoever for martial-arts use.

32. New York Penal Law § 265.00 (14) (one of two subsections so numbered) defines a "chuka stick" (i.e., nunchaku) in substantial part as follows: "any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking . . ."

33. New York Penal Law §§ 265.01 and 265.02 define the possession of a "chuka stick" (i.e., nunchaku) as a Class A misdemeanor and as a Class D felony, respectively, and make no exception from criminal liability for the simple possession of nunchaku or "chuka sticks" within one's own home.  As alleged in paragraphs 9 through 11, *supra*, the Defendant interpreted § 265.01 as criminalizing such simple possession in prosecuting Plaintiff.

34. The New York bill that made mere possession of nunchaku, even in one's own home, a crime, was signed into law on April 16, 1974, and became effective on September 1, 1974.

35. A memorandum from the State of New York Executive Department's Division of Criminal Justice Services to the office of the Governor dated April 4, 1974, pointed out that nunchaku have legitimate uses in karate and other martial-arts training, and opined that "in view of the current interest and participation in these activities by many members of the public, it appears unreasonable--and perhaps even unconstitutional--to prohibit those who have a legitimate reason for possessing chuka sticks from doing so." A true copy of said memorandum is annexed hereto as **Exhibit 1**.

36. The memorandum annexed hereto as Exhibit 1 was received by the office of the Governor on April 9, 1974, before the bill banning nunchaku in New York was signed into law.

37. Within a decade following New York's 1974 complete ban of the nunchaku, several

courts outside the State of New York recognized that the nunchaku is primarily a defensive weapon with socially acceptable uses both within and without the martial arts, as shown by the following cases:

(a) In 1981, an Arizona appellate court sustaining a conviction for criminal possession of nunchaku in an automobile nonetheless recognized that nunchaku have socially acceptable purposes, noting that "the use of nunchakus in the peaceful practice of martial arts or the possession for such use is not a crime." *State v. Swanton*, 629 P.2d 98, 99 (Ariz. Ct. App. 1981).

(b) In 1982, the Supreme Court of Hawaii recognized that, in ancient Okinawa, "nunchakus developed into a defensive weapon against the samurai's sword. Today, nunchaku sticks are widely used in the martial arts to build up dexterity, timing, mind and body coordination and aids in developing a larger sphere of consciousness around an individual." *State v. Muliufi*, 643 P.2d 546 (Haw. 1982).

(c) In 1983, a District of Columbia appellate court noted that "it is worth making a few further observations about the nunchaku. Like the courts of other jurisdictions, we are cognizant of the cultural and historical background of this Oriental agricultural implement-turned-weapon. We recognize that the nunchaku has socially acceptable uses within the context of martial arts and for the purpose of developing physical dexterity and coordination." *In re S.P.*, *Jr.*, 465 A.2d 823, 827 (D.C. 1983).

(d) In 1984, an Ohio appellate court reversed a criminal conviction for possession of nunchaku, holding that "the evidence tends to indicate that the device was used only for lawful purposes" and that "[m]ere possession of an otherwise lawful article . . . does not make it illegal." *State v. Maloney*, 470 N.E.2d 210, 211 (Ohio Ct. App. 1984).

38. The nunchaku is an "arm" as defined by the United States Supreme Court in *District*

*of Columbia v. Heller*, 554 U. S. 570 (2008).

39. The nunchaku is an "arm" typically possessed by law-abiding citizens for lawful purposes in places where it has not been banned.

40.  As evidenced by the memorandum annexed hereto as Exhibit 1, nunchaku were in common use by law-abiding citizens in New York before having been banned here in 1974.

## CONSTITUTIONAL BASES FOR THE CHALLENGE

41. The First and Second Causes of Action pleaded herein challenge the constitutionality of the application of the aforementioned New York statutes to criminalize possession of nunchaku in one's own home without criminal intent on two independent bases.

42. The first basis (corresponding to the First Cause of Action) is that the application of the aforementioned New York statutes to criminalize simple possession of nunchaku in one's own home violates rights specifically conferred by the Second Amendment to the Constitution of the United States, which guarantees a personal right and is applicable as against the states.

43. The second basis (corresponding to the Second Cause of Action) is that the application of the aforementioned New York statutes to criminalize simple possession of nunchaku in one's own home violates unenumerated rights, including those involving protection of the person from unwarranted government intrusions into a dwelling or other private place and/or regulation of activity therein that causes no harm, as has been recognized by the United States Supreme Court in *Lawrence v. Texas*, 539 U.S. 558 (2003).

44. As more fully appears herein, unenumerated rights are specifically guaranteed by the Ninth Amendment to the Constitution of the United States ("Ninth Amendment"), but have largely been recognized in American constitutional jurisprudence under the rubric of substantive

-9-

due process.  Either approach may draw inferentially from the first eight amendments to the Constitution of the United States and/or from other sources in establishing the scope and content of rights not enumerated.

## FIRST CAUSE OF ACTION

45. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 44 as if fully set forth herein.

46. New York Penal Law §§ 265.00 through 265.02, to the extent that said statutes criminalize the simple possession of nunchaku within one's home, infringe upon Plaintiff's rights as conferred by the Second Amendment to the Constitution of the United States and as incorporated as against the states through the Fourteenth Amendment to the Constitution of the United States.

## SECOND CAUSE OF ACTION

47. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 44 as if fully set forth herein.

48. New York Penal Law §§ 265.00 through 265.02, to the extent that said statutes criminalize the simple possession of nunchaku within one's home, infringe upon Plaintiff's unenumerated federal constitutional rights, including, without limitation: (a) those rights guaranteed by the Ninth Amendment to the Constitution of the United States; (b) those rights recognized under the doctrine of substantive due process; (c) those rights recognized by the United States Supreme Court in *Lawrence v. Texas*, 539 U.S. 558 (2003); (d) those rights guaranteed by the Fourteenth Amendment and (e) those rights the existence of which may be drawn inferentially ("penumbras and emanations," *see Griswold v. Connecticut*, 381 U. S. 479 (1965)) from a reading of the first eight amendments to the Constitution of the United States.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     assume jurisdiction over this action;

(2)     declare that those portions of sections 265.00 through 265.02 of the New York Penal Law that define and punish as a crime the simple possession of nunchaku within one's home are unconstitutional and of no force and effect;

(3)     award Plaintiff attorneys' fees pursuant to 42 U.S.C. § 1988; and

(4)     grant such other, further, and different relief as this Court may deem just and proper.

Dated: December 17, 2013
       Port Washington, New York

                                        _____/s_____

                                        JAMES M. MALONEY (514252)
                                        Attorney for Plaintiff
                                        33 Bayview Avenue
                                        Port Washington, New York 11050

                                        (516) 767-1395
                                        maritimelaw@nyu.edu

-11-