# EXHIBIT 3

## TO THE
## DECLARATION OF
## ZACHARY M. MATTISON

JAMES M. MALONEY (JM-5297)
Plaintiff *pro se*
33 Bayview Avenue
Port Washington, New York 11050
Telephone: (516) 767-1395
Email: maritimelaw@nyu.edu

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JAMES M. MALONEY,

                 Plaintiff,

       - against -

KATHLEEN M. RICE, individually and in her official
capacity as District Attorney of the County of Nassau,

              Defendant.

-------------------------------------------------------------------X

                                    **SECOND**
                                   **AMENDED**
                                   **VERIFIED**
                                 **COMPLAINT**

                         Case 2:03-cv-00786

                            (ADS)(MLO)

         JAMES M. MALONEY, as and for his Second Amended Verified Complaint against the above-named Defendant, alleges:

### PARTIES

         1. At the commencement of this action and at all times hereinafter mentioned, Plaintiff was and is a natural person, a citizen of the United States, and a resident of the State of New York, of the County of Nassau, and of this District.

         2. At the commencement of this action and at all times hereinafter mentioned, Defendant was and is a natural person and, upon succession to said office in or about January 2006, was and is the District Attorney of the County of Nassau.  She is sued herein in her official capacity only in connection with the First and Second Causes of Action, and both individually and in her official capacity in connection with the Third Cause of Action.

3. The District Attorney of the County of Nassau is the person responsible for the potential prosecution of Plaintiff under the criminal statutes in question. As more fully appears herein, the District Attorney of the County of Nassau (the late Denis Dillon, originally named as a defendant in this action and the predecessor to the current Defendant) has actually prosecuted Plaintiff under said criminal statutes.

## JURISDICTION, VENUE, AND PROCEDURAL HISTORY

4. This action arises under the Constitution of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and has the power to render declaratory judgment and further relief pursuant to the provisions of 28 U.S.C. §§ 2201-2202. This action is also brought pursuant to the provisions of 42 U.S.C. § 1983.

5. Venue is properly placed in this Court pursuant to 28 U.S.C. § 1391(b).

6. This case was commenced by filing a Verified Complaint *sub nom. Maloney v. Spitzer, et al.* on February 18, 2003. An Amended Verified Complaint ("Amended Complaint") was filed on September 3, 2005. By Memorandum and Order dated January 17, 2007, reported at 470 F. Supp. 2d 205, this Court granted the defendants' Rule 12 motions and dismissed the Amended Complaint *sub nom. Maloney v. Cuomo, et al.*, and appeal was taken. By Opinion dated January 28, 2009, reported at 554 F.3d 56, the United States Court of Appeals for the Second Circuit affirmed. A petition for *certiorari* was filed on June 26, 2009. On June 29, 2010, the United States Supreme Court granted *certiorari sub nom. Maloney v. Rice*, vacated the decision of the United States Court of Appeals for the Second Circuit, and remanded for further consideration in light of *McDonald v. Chicago*, 561 U.S. ___ (June 28, 2010), which held that the Second Amendment is incorporated as against the

states, building upon the Supreme Court's earlier decision in *District of Columbia v. Heller*, 554 U. S. ___ (2008), which in turn had held that the Second Amendment guarantees an individual right. By Summary Order dated August 13, 2010, the United States Court of Appeals for the Second Circuit vacated the judgment of this Court and remanded the case to this Court.

7. Two aspects of this Court's Memorandum and Order dated January 17, 2007, reported at 470 F. Supp. 2d 205, were not appealed: (a) the dismissal of the Governor and the Attorney General; and (b) the dismissal of the Amended Complaint's First Cause of Action, which was based on the First Amendment to the Constitution of the United States. Accordingly, this Second Amended Verified Complaint and its caption reflect the final dismissal of those defendants and of that cause of action.

## GENERAL BACKGROUND

8. On or about August 24, 2000, Plaintiff possessed in his home one or more martial arts devices known as nunchaku or "chuka sticks," consisting of foot-long wooden sticks connected by a cord, the possession of which is defined as a crime by sections 265.00 *et seq.* of the Penal Law of the State of New York, as more fully appears herein.

9. On or about August 24, 2000, The People of the State of New York, through the office of the District Attorney of the County of Nassau, charged Plaintiff with criminal possession of a weapon in the fourth degree, a Class A misdemeanor defined at section 265.01 of the Penal Law of the State of New York, based on Plaintiff's possession within his home of a nunchaku that was found by Nassau County Police in Plaintiff's home.

10. The aforementioned criminal charge for possession of a nunchaku was based solely

on allegations of simple possession of said nunchaku in Plaintiff's home, and was not supported by any allegations that Plaintiff had: (a) used said nunchaku in the commission of a crime; (b) carried or displayed the nunchaku in public; or (c) engaged in any other improper or prohibited conduct in connection with said nunchaku except for such simple possession within his home, nor is any such conduct an element of the defined crime.

11. The aforementioned criminal charge for possession of a nunchaku remained pending against Plaintiff for a period of approximately 29 months, until it was eventually dismissed on or about January 28, 2003.

12. Upon information and belief, said dismissal was not based on any explicit or implicit recognition by the District Attorney that said statutes, as applied against Plaintiff and defining as a crime the simple possession of nunchaku within one's home, are or were unconstitutional.

## PLAINTIFF'S BACKGROUND AND STANDING TO SUE

13. Plaintiff has been a student of the martial arts since approximately 1975, when he began studying Uechi-Ryu, an Okinawan style of karate, under the tutelage of Vincent Pillari in Fort Lee, New Jersey. Plaintiff has subsequently studied various styles of martial arts, including other Okinawan styles of karate, the Ving Tsun or "Wing Chun" style of kung fu, and aikido. Drawing from these and other influences, Plaintiff formulated his own martial arts style, known as Shafan Ha-Lavan, beginning in 1998. Shafan Ha-Lavan incorporates the use of the nunchaku as an integral and essential part of its training and technique.

14. Since 1975, Plaintiff has trained in a peaceful manner with the nunchaku, and has acquired numerous nunchaku, which are or were his personal property.

-4-

15. Plaintiff has never used a nunchaku or any other weapon to inflict harm or physical injury on another human being or on any animal, and has used nunchaku only for socially acceptable purposes, for legitimate martial arts practice, for preparedness in defense of his home, and to develop physical dexterity and coordination.

16. Plaintiff first became interested in the nunchaku, and began training with it in 1975, in part because the weapon is particularly effective in defense against an assailant armed with a knife or other sharp instrument, and in part because Plaintiff's father, John Maloney, had been fatally stabbed on June 19, 1964, when John Maloney, unarmed, attempted to intervene on behalf of a victim of a crime of violence, at which time Plaintiff was five years old.

17. Since May 17, 1980, upon graduation from State University of New York Maritime College, Plaintiff has served honorably as, and remains (in an inactive status), a commissioned officer in the United States Naval Reserve.  From 1986 to 1995, he served as a paramedic in New York City's 911 Emergency Medical Services system, and in that capacity observed numerous instances of serious injury or fatality due to wounds inflicted by assailants armed with knives and other penetrating weapons, some in the victims' own homes.

18. Plaintiff has ties to and roots in the State of New York (including being licensed to practice law in all of the State's courts and in five federal courts sitting therein, consisting of three United States District Courts, the United States Court of Appeals for the Second Circuit, and the United States Court of International Trade) and cannot conveniently relocate, nor does he wish to do so.

19. Because Plaintiff was charged with a Class A misdemeanor for the simple possession of a nunchaku in his own home, and for more than two years lived under the

constant threat of being imprisoned for up to one year in punishment therefor, Plaintiff must reasonably either: (1) forgo possession of any nunchaku within his own home; (2) relocate from the State of New York to a jurisdiction that does not criminalize the simple possession of nunchaku within the home; or (3) risk being the target of another prosecution for disobeying the same law, even though he believes he has a constitutional right to do so.

20.  Plaintiff still wishes to possess nunchaku in his home provided that he may do so lawfully.  Thus, Plaintiff is forced to choose between risking further criminal prosecution and forgoing what should be declared to be constitutionally protected conduct (i.e., possessing nunchaku in his home for the legitimate purposes of martial-arts practice and home defense) and is thus caught "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).

21.  Plaintiff accordingly has standing to seek declaratory judgment on the question of the constitutionality of those New York statutes that criminalize the simple possession of nunchaku within one's home.


## THE NUNCHAKU AND ITS REGULATION BY VARIOUS GOVERNMENTS

22.  Upon information and belief, the nunchaku was originally a farm implement, and was developed at least as early as 1609 for use as a weapon on the island of Okinawa after invading oppressive governments attempted to disarm the people there.

23.  Upon information and belief, the nunchaku had already been used as an "arm" or weapon for the common defense, by the citizens' militias of Okinawa, in defense against samurai invaders armed with swords and other weapons, well before the dates of the

-6-

ratification of the United States Constitution and of the first ten amendments thereto.

24. The nunchaku, unlike most other weapons, including firearms, knives, swords and all other penetrating weapons, is capable of being used in a restrained manner such that an opponent may be subdued without resorting to the use of deadly physical force.

25. For the reasons stated in the foregoing paragraph, the nunchaku is used by many police departments within the United States.

26. The nunchaku, in comparison with most other arms, including firearms, is relatively safe and innocuous, such that a child or person untrained in the weapon's proper use would be unable to inflict serious injury upon him- or herself, either accidentally or intentionally.

27. Accordingly, nunchaku kept in the home, even if not secured in a locked compartment, are far less likely to be associated with accidental injury or fatality than are most other weapons or even common household objects such as kitchen knives and scissors.

28. Upon information and belief, no states other than New York and California have defined and prosecuted as a crime the mere possession of nunchaku within one's own home.

29. New York Penal Law § 265.00 (14) (one of two subsections so numbered) defines a "chuka stick" (i.e., nunchaku) in substantial part as follows: "any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking . . ."

30. New York Penal Law §§ 265.01 and 265.02 define the possession of a "chuka stick" (i.e., nunchaku) as a Class A misdemeanor and as a Class D felony, respectively, and

make no exception from criminal liability for the simple possession of a nunchaku or "chuka stick" within one's own home. As alleged in paragraphs 9 through 11, *supra*, the District Attorney interpreted § 265.01 as criminalizing such simple possession in prosecuting Plaintiff.

31. Upon information and belief, the New York bill that made mere possession of nunchaku, even in one's own home, a crime, was signed into law on April 16, 1974, and became effective on September 1, 1974.

32. Upon information and belief, a memorandum from the State of New York Executive Department's Division of Criminal Justice Services to the office of the Governor dated April 4, 1974, pointed out that nunchaku have legitimate uses in karate and other martial-arts training, and opined that "in view of the current interest and participation in these activities by many members of the public, it appears unreasonable--and perhaps even unconstitutional--to prohibit those who have a legitimate reason for possessing chuka sticks from doing so." A true copy of said memorandum is annexed hereto as **Exhibit 1**.

33. Upon information and belief, the memorandum annexed hereto as Exhibit 1 was received by the office of the Governor on April 9, 1974, before the bill banning nunchaku in New York was signed into law.

34. Upon information and belief, a letter and report from the Committee on the Criminal Court of the New York County Lawyers' Association to the Governor dated May 3 and April 29, 1974, respectively, opined that "[w]hile the possession of [nunchaku] with demonstrable criminal intent is a proper subject of legislation, the proposed legislation goes further, making the mere possession (even absent criminal intent) a criminal offense. If it is the desire of the legislature to prohibit the use of nunchakus in criminal conduct, a more narrowly drawn statute can be fashioned to achieve this end." True copies of said letter and

report are annexed hereto as **Exhibit 2**.

35. Upon information and belief, the letter and report annexed hereto as Exhibit 2 were received by the office of the Governor on May 7, 1974, after the bill banning nunchaku in New York had already been signed into law.

36. Since 1974, many courts outside the State of New York have recognized that the nunchaku is primarily a defensive weapon with socially acceptable uses both within and without the martial arts:

(a) In 1981, an Arizona appellate court sustaining a conviction for criminal possession of nunchaku in an automobile nonetheless recognized that nunchaku have socially acceptable purposes, noting that "the use of nunchakus in the peaceful practice of martial arts or the possession for such use is not a crime."  *State v. Swanton*, 629 P.2d 98, 99 (Ariz. Ct. App. 1981).

(b) In 1982, the Supreme Court of Hawaii recognized that, in ancient Okinawa, "nunchakus developed into a defensive weapon against the samurai's sword.  Today, nunchaku sticks are widely used in the martial arts to build up dexterity, timing, mind and body coordination and aids in developing a larger sphere of consciousness around an individual." *State v. Muliufi*, 643 P.2d 546 (Haw. 1982).

(c) In 1983, a District of Columbia appellate court noted that "it is worth making a few further observations about the nunchaku.  Like the courts of other jurisdictions, we are cognizant of the cultural and historical background of this Oriental agricultural implement-turned-weapon.  We recognize that the nunchaku has socially acceptable uses within the context of martial arts and for the purpose of developing physical dexterity and coordination." *In re S.P., Jr.*, 465 A.2d 823, 827 (D.C. 1983).

(d) In 1984, an Ohio appellate court reversed a criminal conviction for possession of nunchaku, holding that "the evidence tends to indicate that the device was used only for lawful purposes" and that "[m]ere possession of an otherwise lawful article . . . does not make it illegal." *State v. Maloney*, 470 N.E.2d 210, 211 (Ohio Ct. App. 1984).

37.  The nunchaku is an "arm" as defined by the United States Supreme Court in *District of Columbia v. Heller*, 554 U.S. ___ (2008).

38. The nunchaku is an "arm" with a reasonable connection to a "militia," both in 17th-Century Okinawa as described in paragraph 23, *supra*, and in 20th- and 21st-Century America, based, *inter alia*, on its use by Navy SEALs in military operations in Vietnam and, as alleged in paragraph 25, *supra*, by police departments throughout the nation.

39. The nunchaku is an "arm" typically possessed by law-abiding citizens for lawful purposes where it has not been banned, and, as evidenced, *inter alia,* by the memorandum annexed hereto as Exhibit 1, was typically possessed by law-abiding citizens for lawful purposes in New York before being banned in New York in 1974.

40. The nunchaku is not a "dangerous or unusual weapon," *District of Columbia v. Heller*, 554 U.S. ___ (2008), that may be denied Second Amendment protection based on extreme inherent destructive capacity such as may exist in such weapons as short-barreled ("sawed-off") shotguns.

41.  The nunchaku lacks highly destructive capabilities as were present with the sawed-off shotgun at issue in *United States v. Miller*, 307 U.S. 174 (1939), and the nunchaku contains no stored potential energy as is the case with a firearm cartridge or explosive device.

42. Under New York Penal Law §§ 265.00 through 265.01, New York's treatment of its citizens who have no previous criminal record, if found guilty of possessing nunchaku in their

-10-

homes, "far from imposing a minor fine, threatens citizens with a year in prison," *District of Columbia v. Heller*, 554 U. S. ___ (2008).

43. Subsequent to the prosecution of Plaintiff as described in paragraphs 9 to 12, *supra*, additional persons have been prosecuted in and under the authority of the State of New York for simple possession of nunchaku in their homes.

44. During roughly the same time-frame as the prosecution of Plaintiff as described in paragraphs 9 to 12, *supra*, the State of New York caused notices to be sent to citizens of New York who had been identified as having purchased nunchaku by Internet or mail order, with such notices advising such citizens to surrender their nunchaku to law enforcement agencies.

45. Accordingly, this action is not hypothetical, nor would the declaratory judgment sought in this action amount to a mere advisory opinion, and it is the province and duty of this Court to safeguard the ideals and free institutions that are the pride and glory of our country.

## CONSTITUTIONAL BASES FOR THE CHALLENGE

46. The First and Second Causes of Action pleaded herein challenge the constitutionality of the application of the aforementioned New York statutes to criminalize possession of nunchaku in one's own home without criminal intent on two independent bases.

47. The first basis (First Cause of Action) is that the application of the aforementioned New York statutes to criminalize possession of nunchaku in one's own home without criminal intent violates rights specifically conferred by the Second Amendment to the Constitution of the United States, which guarantees a personal right and is applicable as against the states.

48. The second basis (Second Cause of Action) is that the application of the aforementioned New York statutes to criminalize possession of nunchaku in one's own home

without criminal intent would violate unenumerated rights, including those involving protection of the person from unwarranted government intrusions into a dwelling or other private place and/or regulation of activity therein that causes no harm, as has been recognized by the United States Supreme Court in *Lawrence v. Texas*, 539 U.S. 558 (2003).

49. As more fully appears herein, unenumerated rights are specifically guaranteed by the Ninth Amendment to the Constitution of the United States ("Ninth Amendment"), but have largely been recognized in American constitutional jurisprudence under the doctrine of substantive due process. Either approach may draw inferentially from the first eight amendments to the Constitution of the United States and/or from other sources in establishing the scope and content of rights not enumerated.

## FIRST CAUSE OF ACTION

50. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 49 as if fully set forth herein.

51. New York Penal Law §§ 265.00 through 265.02, to the extent that said statutes criminalize the simple possession of nunchaku within one's home for martial-arts practice and/or home defense, infringe upon Plaintiff's rights as conferred by the Second Amendment to the Constitution of the United States and as incorporated as against the states through the Fourteenth Amendment to the Constitution of the United States.

## SECOND CAUSE OF ACTION

52. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 49 as if fully set forth herein.

53. New York Penal Law §§ 265.00 through 265.02, to the extent that said statutes criminalize the simple possession of nunchaku within one's home for martial-arts practice and/or

home defense, infringe upon Plaintiff's unenumerated federal constitutional rights, including, without limitation: (a) those rights guaranteed by the Ninth Amendment to the Constitution of the United States; (b) those rights recognized under the doctrine of substantive due process; (c) those rights recognized by the United States Supreme Court in *Lawrence v. Texas*, 539 U.S. 558 (2003); (d) those rights guaranteed by the Fourteenth Amendment and (e) those rights the existence of which may be drawn inferentially ("penumbras and emanations," *see Griswold v. Connecticut*, 381 U. S. 479 (1965)) from a reading of the first eight amendments to the Constitution of the United States and/or of the Declaration of Independence.

## THIRD CAUSE OF ACTION

54. This cause of action is supplemental to the Amended Complaint, in that it arises out of an event that occurred after the filing of the Amended Complaint, namely, the unlawful public disclosure made by Defendant at page 6 of the Appellee's Brief dated October 24, 2007, filed in the United States Court of Appeals for the Second Circuit, stating that **"since Plaintiff's infant sons had been in the home at the time of the incident, Office of Child Family Services investigated, concluded that the incident 'indicated' maltreatment of his sons, and Plaintiff was listed on the New York State Child Abuse and Maltreatment Register."**

55. By stating the foregoing, Defendant publicly disclosed that Plaintiff was, as of the date such public disclosure was made, the subject of an "indicated" report of child abuse or maltreatment, and that he was accordingly listed on the New York State Central Register of Child Abuse and Maltreatment (hereinafter, the "Register" or the "Central Register").

56. In making the disclosure described in paragraph 54, *supra*, Defendant made factual allegations that were not in the record then before the United States Court of Appeals for the

Second Circuit, were not before this Court before that appeal was taken, and constituted statutorily confidential information (see paragraph 81, *infra*) that had no relevance to the appeal.

57. In making the disclosure described in paragraph 54, *supra*, and in permitting such disclosure to remain without retracting it before it became more widely disseminated (i.e., "maintaining" the disclosure), Defendant was acting under color and authority of state law.

58. This cause of action is brought pursuant to the provisions of 42 U.S.C. § 1983 and is not brought pursuant to state law.

59. Notwithstanding the foregoing, a state statute (see paragraph 81, *infra*) prohibiting the disclosure described in paragraph 54, *supra*, bears upon Plaintiff's claim for deprivation of due process and Defendant's lack of qualified immunity is accordingly referenced in this pleading.

60. In making and maintaining the disclosure described in paragraph 54, *supra*, Defendant violated Plaintiff's rights, privileges and/or immunities as secured by the Constitution and laws of the United States, including but not limited to: (a) those rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States, including but not limited to the right to due process; and (b) those rights protecting the individual from disclosure of statutorily confidential information contained in the Central Register as recognized in *Harman v. City of New York*, 140 F. 3d 111 (2d Cir. 1998).

61. Although the disclosure described in paragraph 54, *supra*, was in substantial part correct at the time that it was made (but Plaintiff disputes that any proper investigation led to his being listed on the Central Register), Plaintiff had at that time not yet been granted the administrative hearing to which he was entitled by law, even though Plaintiff had by then diligently sought adjudication of the matter for some six years.  On July 14, 2008, some nine (9) months subsequent to the date of the disclosure described in paragraph 54, *supra*, the

-14-

administrative hearing described in the foregoing paragraph was held following Plaintiff's final and successful request for same.

62. On September 22, 2008, an administrative decision was rendered, based on the administrative hearing of July 14, 2008, noting that "[t]he Agency based its indication on the proposition that the Appellant's failure to surrender himself to the police and the fact that he allowed them to barricade his home for about twelve hours amounts to maltreatment of his one year old twins" and ordering that "[t]he request of [Plaintiff] that the record of the report . . . relating to him being maintained in the Central Register be amended to unfounded is granted." The administrative decision described above stated, *inter alia*:

> The essential facts are not in dispute. There is no dispute that the Appellant [Plaintiff herein] refused to surrender to the police officers or allow them in to his home. There is also no dispute that the family was observed carrying on their daily activities not minding the police officers in front of their property. The Agency based its indication on the proposition that the Appellant's failure to surrender himself to the police and the fact that he allowed them to barricade his home for about twelve hours amounts to maltreatment of his one year old twins that were observed playing and being fed by their parents. To prove its case, the Agency presented the case notes of the investigative caseworker. The progress notes indicated that the children were seen playing and that the family was seen eating their dinner and not paying any attention to the officers outside their home. The Agency opined that the Appellant placed his children at risk of harm for not surrendering to the police when they knocked at his door. Based on that premise, the Agency concluded that the Appellant maltreated his children.
>
> ........
>
> The question to be addressed in this case is whether the Appellant maltreated [his children] as indicated by the Agency. Based on the evidence presented by the Agency, it failed to prove by a fair preponderance of the evidence that the Appellant maltreated his children by not allowing the police officers in to his home. The fact that the officers barricaded his home for twelve hours while the children were observed playing with their parents does not amount to maltreatment. The Appellant was observed taking care of his children during the period in question. The Agency did not present any evidence to prove that the Officers threatened to forcefully break in to his home. When the Appellant was eventually arrested, he came outside quietly.

-15-

Consequently, in light of the foregoing, the Agency did not meet its burden by a fair preponderance of the evidence establishing that the Appellant failed to exercise the minimum degree of care owed to [his children].  Therefore, the Agency failed to prove by a fair preponderance of the evidence that by Appellant's actions on the date in question threatened the physical, mental and emotional condition of [his children].

Accordingly, it is concluded that the allegations of maltreatment against the Appellant contained in the Central Register report have not been established by a fair preponderance of the evidence and as such, the report must be amended from indicated to unfounded and sealed.

A redacted but otherwise true copy of the September 22, 2008, decision described above is annexed hereto as **Exhibit 3**.  The names of Plaintiff's minor children and the recitation of the contents of the initial report (many parts of which, as reflected in the Nassau County Department of Social Services case worker's notes, were subsequently admitted to have been inaccurate by the person who maliciously and in bad faith made the initial report, described in paragraph 65, *infra*) have been redacted.

63. Under the applicable provisions of § 413 of the New York Social Services Law, if any police officer or other law enforcement official had had reasonable cause to believe that Plaintiff had committed any act of child abuse or maltreatment, such police officer(s) or other law enforcement official(s) would have had a legal obligation to make a report of suspected child abuse or maltreatment to the New York State Office of Children and Family Services and/or the Nassau County Department of Social Services.

64. Upon information and belief, no police officer(s) or other law enforcement official(s), whether federal, state, county or local, have ever made any report of suspected child abuse or maltreatment to the New York State Office of Children and Family Services and/or the Nassau County Department of Social Services in connection with Plaintiff.

65. Upon information and belief, on or about August 28, 2000, a subsequently identified

-16-

individual who is not a party hereto, is not a member of Plaintiff's family, and is not and has never been a police officer or other law enforcement official, maliciously and in bad faith made the unfounded report of alleged child abuse or maltreatment to the New York State Office of Children and Family Services and/or the Nassau County Department of Social Services that resulted in Plaintiff's being the subject of an "indicated" report and being listed on the Central Register for more than seven years, as hereinbefore described. That individual, whose identity is omitted in order to avoid publicly shaming that individual, has subsequently admitted under oath to having made the report.

66. Because Plaintiff's listing on the Central Register had all along been unsupported by a fair preponderance (or, indeed, by *any*) evidence that Plaintiff had maltreated his children, Plaintiff had been denied the due process requirements articulated in *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994), and Defendant's making and maintaining the complained-of disclosure described in paragraph 54, *supra*, furthered and magnified that deprivation of due process.

67. Although Plaintiff moved before the Second Circuit to strike the complained-of brief, that motion was first referred to the Merits Panel, then denied once by the Panel, and then denied again after Plaintiff renewed the motion with the permission of the Court after oral argument had taken place in December 2008. Following that last denial, Plaintiff had no effective means left of obtaining reversal of the order denying his motion to strike the complained-of brief, which is now a matter of permanent and, for all practical purposes, indelible, public record.

68. Defendant did not withdraw the complained-of brief, although Plaintiff formally demanded that she do so in writing on or about November 19, 2007, shortly after the motion described in the foregoing paragraph was referred to the Merits Panel. A true copy of that

formal demand, entitled, "Notice of Entry and Demand for Retraction of Appellee's Brief," which was mailed to all counsel of record in this case and to Defendant herself on or about November 19, 2007, is annexed hereto as **Exhibit 4**.

69. Defendant did not withdraw or seek to redact the complained-of brief, although Plaintiff again pointed out to her in writing on or about August 4, 2008, that the disclosure made in it amounted to a misdemeanor under § 422 of the New York Social Services Law (see paragraph 81, *infra*). A true copy of that correspondence, which Plaintiff mailed to Defendant on or about August 4, 2008, enclosing a copy of the complained-of brief as well as a copy of the document annexed hereto as Exhibit 4, is annexed hereto as **Exhibit 5**.

70. Defendant did not withdraw or seek to redact the complained-of brief, although Plaintiff informed her in writing on or about September 29, 2008, that the decision described in paragraph 62, *supra*, had resulted in the determination that Plaintiff's having been listed on the Central Register had never been supported by a fair preponderance of the evidence. A true copy of that correspondence, which Plaintiff mailed to Defendant on or about September 29, 2008, enclosing a redacted copy of the decision identical to that annexed hereto as Exhibit 3 as well as a copy of the August 4, 2008, letter annexed hereto as Exhibit 5, is annexed hereto as **Exhibit 6**.

71. Upon information and belief, Appellee's Brief dated October 24, 2007, as filed and containing the complained-of disclosure described in paragraph 54, *supra*, was scanned and converted into electronic format and made available to the public via Westlaw® and possibly other on-line sources at least as early as May 2009 (which is when Plaintiff first discovered that it was available on Westlaw®), where it remains publicly available, and may be expected to remain publicly available, indefinitely and indelibly, in all likelihood for the remainder of Plaintiff's life.

72. As more fully appears herein, Plaintiff has suffered a tangible economic loss, as a result of and by virtue of Defendant's having made and maintained the disclosure described in paragraph 54, *supra*.

73. From the 2001-2002 through the 2008-2009 school years, with an approximately one-year interruption as described in paragraph 76, *infra*, Plaintiff taught a course, "Introduction to Celestial Navigation," consisting of four two-hour sessions per offering of the course, in his local school district, earning $20 per classroom hour for doing so for up to two offerings of the course per school year, and deriving considerable personal and professional satisfaction from doing so.

74. One or more of Plaintiff's children has attended elementary school in the same local school district since 2004, and one or more of Plaintiff's children is expected to attend middle school and/or high school in the same local school district until 2016.

75. As more fully appears herein, in making and maintaining the disclosure described in paragraph 54, *supra*, Defendant created an unacceptable risk that the disclosed information would become known to Plaintiff's local school district, causing Plaintiff and his family embarrassment and worse, if Plaintiff were to have continued to teach the course he had taught there since 2001.

76. In mid-2007, before the complained-of disclosure described in paragraph 54, *supra*, had been made, but after the management and administration of Plaintiff's course, "Introduction to Celestial Navigation," had been temporarily outsourced by Plaintiff's local school district to a private company (during which time Plaintiff refrained from teaching the course because that company was conducting "background checks" of instructors before allowing them to teach, and Plaintiff feared that his being listed on the Central Register would come to light) and then ceded back to the local school district, Plaintiff spoke to local school

district personnel by telephone and indicated that he would like to resume teaching the Celestial

Navigation course, and he subsequently did so later that year.  During that telephone

discussion with local school district personnel, Plaintiff mentioned the "background check"

requirements of the company to which the program had temporarily been outsourced, and

commented that those "background check" requirements seemed like "overkill" given that

most attendees were over 18 and that it was, after all, an adult education program.  The school

district employee informed Plaintiff that that was not all that unusual given evolving "due

diligence" requirements, and that she (the school district employee) would not be surprised if

the district itself implemented something similar in the future.  Plaintiff was not pleased to

learn this, but (discretion being the better part of valor) kept that displeasure to himself.

77. Given his recollection of the foregoing discussion, and within a week of Plaintiff's

discovering in May 2009 that Appellee's Brief dated October 24, 2007, as filed and containing

the complained-of disclosure described in paragraph 54, *supra*, had been scanned and converted

into electronic format and made available to the public via Westlaw® and possibly other on-line

sources, as described in paragraph 71, *supra*, Plaintiff made a considered decision to stop

teaching the course because of the unacceptable risk that the disclosed information in the publicly

available brief would become known to Plaintiff's local school district if Plaintiff continued to

teach the course.  In a letter dated May 26, 2009, Plaintiff wrote to local school district

personnel informing them of his decision and stating by way of explanation only that his

decision had been made "after careful consideration and in light of recent developments."

78. Plaintiff has suffered a tangible economic loss of livelihood by virtue of his having

reasonably chosen to give up his teaching job in May 2009 to avoid the above-described

unacceptable risk that the complained-of disclosure described in paragraph 54, *supra*, which had

by then been scanned and converted into electronic format and made available to the public via Westlaw® and possibly other on-line sources as described in paragraph 71, *supra*, would become known to Plaintiff's local school district.

79. Plaintiff has also suffered stigma, plus harm to his personal and professional reputation as an attorney engaged in federal litigation and as an aspiring professor of law, all as a result of Defendant's having made and maintained the disclosure described in paragraph 54, *supra*. Before the disclosure described in paragraph 54, *supra*, had been made, Plaintiff had invested tens of thousands of dollars and considerable time and effort in earning a Master of Laws degree at New York University in hopes of teaching law.

80. In making and maintaining the disclosure described in paragraph 54, *supra*, Defendant failed to exercise, and abused, the just and rightful authority conferred upon her as a public officer by the laws of the State of New York and of the United States.

81. In making and maintaining the disclosure described in paragraph 54, *supra*, Defendant was acting in violation of § 422 of the New York Social Services Law, which provides at subdivision 12:

> Any person who willfully permits and any person who encourages the release of any data and information contained in the central register to persons or agencies not permitted by this title shall be guilty of a class A misdemeanor.

82. In making and maintaining the disclosure described in paragraph 54, *supra*, Defendant willfully permitted the release of data contained in the Central Register to persons or agencies not permitted to receive it.

83. In making and maintaining the disclosure described in paragraph 54, *supra*, Defendant encouraged the release of data contained in the Central Register to persons or agencies not permitted to receive it.

-21-

84. One of the purposes of § 422(12) of the New York Social Services Law is to prevent the deprivation of due process and the unfair stigmatization that would result from public disclosure of the fact that a person is listed on the New York State Child Abuse and Maltreatment Register before that person has even had a fair hearing, especially if the listing were later found to be unsupported, as was the case here.

85. Accordingly, Plaintiff was a member of the class of persons for whose particular benefit § 422(12) of the New York Social Services Law was enacted.

86. Compensatory damages in connection with this cause of action are sought against Defendant in her individual capacity to the extent that she was acting under color of state law but without legitimate authority, and is thus subject to suit for damages in her individual capacity under the doctrine articulated in *Home Telephone & Telegraph v. City of Los Angeles*, 227 U.S. 278 (1913) (*see also Patterson v. Coughlin*, 761 F.2d 886 (2d Cir. 1985)).

87. Defendant is not entitled to sovereign immunity as a state officer, because she is defined as a "local officer" by § 2 of the New York Public Officers Law, and by operation of the doctrine articulated in *Fisher v. State*, 23 Misc. 2d 935, 203 N.Y.S.2d 363 (N.Y. Ct. Cl. 1959), to the effect that there is no valid cause of action against the State of New York based on the actions of a District Attorney because the District Attorney and his or her assistants "are not officers or employees of the State," nor is Defendant entitled to qualified immunity, because the provisions of § 422(12) of the New York Social Services Law (set forth at paragraph 81, *supra*) are unambiguous and clearly establish Plaintiff's right to be free of the consequences of such an illegal disclosure, and Defendant, a District Attorney, could not in good faith have believed that making and maintaining such an illegal disclosure was permissible, nor is Defendant entitled to absolute immunity because she was not engaged in a prosecutorial function.

-22-

88. But for Defendant's having made and maintained the disclosure described in paragraph 54, *supra*, Plaintiff would have continued teaching the "Introduction to Celestial Navigation" course in his local school district that he had taught since 2001, would have earned $20 per classroom hour or more for doing so for as many as two offerings (up to 16 classroom hours) per school year, and would have continued to derive considerable personal and professional satisfaction from doing so, for at least ten (10) more years beyond the date that he stopped teaching.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   assume jurisdiction over this action;

(2)   declare that those portions of sections 265.00 through 265.02 of the New York Penal Law that define and punish as a crime the simple possession of nunchaku within one's home are unconstitutional and of no force and effect;

(3)   award Plaintiff reasonable compensatory damages for tangible economic losses in connection with the Third Cause of Action in the amount of $1,600;

(4)   award Plaintiff reasonable compensatory damages in connection with the Third Cause of Action for intangible losses, including past and future harm to his reputation, in an amount to be determined by the Court;

(5)   award Plaintiff punitive damages in an amount to be determined by the Court;

(6)   award Plaintiff costs, expert witness fees, and, to the extent that he is in future represented by counsel, attorneys' fees; and

(7)   grant such other, further, and different relief as this Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 22, 2010
Port Washington, New York

_____/s_____

JAMES M. MALONEY (JM-5297)
Plaintiff *pro se*
33 Bayview Avenue
Port Washington, New York 11050

(516) 767-1395
maritimelaw@nyu.edu

-23-

A 8667-A



**STATE OF NEW YORK**
**EXECUTIVE DEPARTMENT**
DIVISION OF CRIMINAL JUSTICE SERVICES

*Memorandum*   APR 9 REC'D

April 4, 1974

TO:   Michael Whiteman

FROM:   Archibald R. Murray

RE:   A. 8667-A

----------------------------------------------------------------

## Purpose

To amend a number of sections in Article 265 of the Penal Law
to penalize the possession of, manufacture or dealing in "chuka sticks."

## Discussion

This bill proposes to outlaw the possession, manufacture or shipment
of "chuka sticks," as that device is defined in bill section 1.
By placing the basic prohibition in Penal Law section 265.05(3),
the possession of chuka sticks is made per se criminal, i.e., no
mens rea is required and the crime, therefore, is one of absolute
liability.  Even if the chuka stick is being employed with signifi-
cant frequency as a weapon in the commission of violent crimes,
its inclusion in the per se category is of doubtful wisdom and
questionable legality.

It is our understanding that chuka sticks are also used in karate
and other "martial arts" training.  In view of the current interest
and participation in these activities by many members of the public,
it appears unreasonable -- and perhaps even unconstitutional -- to
prohibit those who have a legitimate reason for possessing chuka
sticks from doing so.  There are alternative ways in which the
problem can be handled.  If it is desired to keep chuka sticks in
the per se prohibited class, an exception could be drafted for those
who possess them for lawful martial arts training.  Such a course
is employed for switchblade and gravity knives, which are also
prohibited in this same subdivision (P.L. sec. 265.05[3]).  In
their case, section 265.20(5) permits their possession for hunting
or fishing by a person who has a hunting or fishing license.

A second, and more appropriate, alternative would be to treat
chuka sticks under Penal Law section 265.05(9) where, to constitute
the crime, possession must be coupled with "an intent to use the
same unlawfully against another."  This would put chuka sticks
in the same category as other objects which are potential weapons
but which also have legitimate uses, such as knives and razors.

page 2

It should be noted that the first version of this bill (A. 8667) in fact pursued precisely this latter course.

A technical -- probably typographical -- error appears on page 1, line 4. The word "designated" probably should read "designed."

<u>Recommendation</u>

In view of the foregoing, we cannot recommend approval of this bill in its present form.

09

chap 179

**PRESIDENT**
HENRY N. ESS, III

**VICE PRESIDENTS**
WILBUR H. FRIEDMAN
LAWRENCE X. CUSACK          **EXECUTIVE DIRECTOR**
ANDREW Y. ROGERS              JULIUS ROLNITZKY

**SECRETARY**                        **ASSISTANT TREASURER**
THOMAS KEOGH                  MICHAEL D. JAKIEME

**TREASURER**                          **LIBRARIAN**
SOLOMON E. STAR               FREDERIC S. BAUM

A 8667 A
B

MAY 7 REC'D

14 VESEY STREET — FACING ST. PAUL'S
NEW YORK, N.Y. 10007

CORTLANDT 7-6846

For further information
please communicate with:
Gregory J. Perrin, Esq.
225 Broadway, R-2515
New York, N. Y.  10007
349-1390

May 3, 1974

Hon. Malcolm Wilson
Executive Chamber
Albany, N. Y.  12224

My dear Sir:

The Committee on the Criminal Court of the New York
County Lawyers' Association has disapproved the
following bill and believes that it should not become
law:

A. 8359-A
A. 8667-A

A copy of a report recommending disapproval is enclosed.

Very truly yours,

BENJAMIN LEVINE

Chairman, Committee on State Legislation

12

INTRODUCED BY ASSEMBLYMAN MANNIX
INTRODUCED BY SENATORS PISANI, ACKERSON, GORDON,
    FLYNN, KNORR
INTRODUCED BY ASSEMBLYMAN ROSS; Multi-sponsored by:
    ASSEMBLYMEN BROWN, HURLEY, LEVY, LOPRESTO, MANNIX,
    SUCHIN, VOLKER, ABRAMSON
INTRODUCED BY SENATORS BARCLAY, PADAVAN

April 29, 1974                Report No. 184              A. 8359-A
                                                         Same as S. 7685
                                                         A. 8667-A
                                                         Same as S. 9034

### NEW YORK COUNTY LAWYERS' ASSOCIATION
14 Vesey Street - New York 10007

Report of Committee on the Criminal Court on Assembly Bill 8359-A
same as Senate Bill 7685, Assembly Bill 8667-A same as Senate Bill
9034, which seek to amend Sections 265.00, 265.05, 265.10, 265.15
of the Penal Law with regard to the possession of certain weapons.

### RECOMMENDATION: DISAPPROVAL

Both of these bills seek to add "nunchakus" to the list of
weapons the possession of which is proscribed by Article 265 of the
Penal Law.

Both bills have been amended and recommitted by substitute
bill in Assembly. The amendments, in both cases, removed from the
proposed legislation the presumption, from mere possession, of an
intent to use the proscribed device unlawfully against another. In
place of this presumption, both bills now make unlawful the mere
possession of nunchakus, without regard to the issue of unlawful
intent.

While it is true that nonchakus, chuka sticks and like objects
are capable of use in criminal conduct, it is the sense of this
Committee that they are not properly included in the provisions of
Article 265 of the Penal Law as proposed.

While the possession of these items with demonstrable criminal
intent is a proper subject for legislation, the proposed legislation
goes further, making mere possession (even absent criminal intent)
a criminal offense. If it is the desire of the legislature to
prohibit the use of nunchakus in criminal conduct, a more narrowly
drawn statute can be fashioned to achieve this end.

                          Respectfully submitted,

                          COMMITTEE ON THE CRIMINAL COURT

                          Gregory J. Perrin, Chairman

Report prepared for
the Committee by
MR. ALAIN M. BOURGEOIS

**STATE OF NEW YORK**
**OFFICE OF CHILDREN AND FAMILY SERVICES**

---

In the Matter of the Appeal of

**JAMES MALONEY**

pursuant to Section 422 of the Social Services Law

:
:
:
:   **DECISION**
:   **AFTER**
:   **HEARING**
:
:
:
:   **ID 22619**

---

Before:               Florence Monwe
                      Administrative Law Judge


Held At:               Nassau County Department of
                       Social Services
                       60 Charles Lindbergh Boulevard
                       Uniondale, New York, 11553
                       July 14, 2008


Parties:               New York State Central Register
                       of Child Abuse and Maltreatment
                       P.O. Box 4480
                       Albany, New York 12204
                       Documents submitted in lieu
                       of appearance


                       Nassau County Department of
                       Social Services
                       60 Charles Lindbergh Boulevard
                       Uniondale, New York, 11553
                       By: Lee Samowitz, Esq.


                       James Maloney, Appellant
                       33 Bayview Avenue
                       Port Washington, New York 11050
                       By: Victor M. Serby, Esq.
                           255 Hewlett Neck Road
                           Woodmere, New York 11598

James Maloney                                    2

## JURISDICTION

The New York State Central Register of Child Abuse and Maltreatment (the Central Register) maintains a report indicating James Maloney (the Appellant) for maltreatment. The Appellant requested that the Central Register amend the report. After conducting an administrative review, the Central Register denied that request. This hearing was then scheduled in accordance with the requirements of Social Services Law (SSL) § 422(8)(b).

Pursuant to SSL § 422(8)(c), Valmonte v. Bane, 18 F.3d 992 (1994), Lee "TT" v. Dowling, 87 N.Y.2d 699, 642 N.Y.S.2d 181 (1996), Walter W. v. NYSDSS, 235 A.D.2d 592, 651 N.Y.S.2d 726 (3rd Dept., 1997), mot. for lv. to app. den. 89 N.Y.2d 813, 658 N.Y.S.2d 243 (1997), and Local Commissioners Memorandum, 97 LCM-58, this hearing decision will determine:  (a) whether there is a fair preponderance of the evidence that the Appellants committed the acts of maltreatment alleged, and (b) if so, whether such acts are relevant and reasonably related to employment by a child care agency, to the adoption of a child or to the provision of foster care.

### FINDINGS OF FACT

An opportunity to be heard having been afforded the parties and evidence having been considered, it is hereby found:

1.   The Central Register contains an "indicated" report (███████████) of maltreatment by the Appellant of his twin sons, ████ and ████, who were a year old respectively at the time the maltreatment report was made on August 28, 2000.

2.   The initial report alleges, in pertinent part, that



James Maloney                                    3



3.   The initial report was investigated by the Nassau County Department of Social Services (the Agency).

4.   On April 12, 2001, the Agency indicated the report against Appellant for inadequate guardianship of ███ and ███.

5.   On or around August 28, 2000, the Appellant pointed a telescope at a Verizon worker on top of a pole near his property. The worker thought that the Appellant pointed a gun at him and called the police. (See Agency Exhibit 2).

6.   When the police officers arrive at the Appellant's home and asked him to come out side, the Appellant told them that he has not committed any crime and would not allow them into his home. Instead, the Appellant demanded a warrant to arrest or search his home. The officers did not procure any warrant of arrest rather they barricaded his property for about twelve hours. The Appellant eventually surrendered to the Police Officers when his Rabi came to his house and asked him to let the police in to his home. The Agency opined that such behavior amounted to maltreatment.

7.   The Appellant was arrested and taken to Nassau County Medical Center for psychiatric evaluations. The Appellant was discharged the same night.

8.   During the entire episode, the Appellant and his family carried on their normal daily activities not paying any attention to the officers out side of his property. According to the Agency's notes, the family was observed eating dinner and the twins playing.

James Maloney                                        4

## ISSUE

Is the finding that Appellant maltreated ███ and ███ supported by a fair preponderance of the evidence?

If maltreatment is established, is such maltreatment relevant and reasonably related to employment in child care agency, the adoption of a child or to their provision of foster?

## DISCUSSION

The Agency did not prove by a fair preponderance of the evidence that the Appellant maltreated ███ and ███. As the maltreatment report will be amended to unfounded and sealed, the question whether the acts alleged is relevant and reasonably related to childcare issues needs not be addressed.

Pursuant to SSL § 424, the Agency determined that the initial report of maltreatment was "indicated". An "indicated report" means a report made "...if an investigation determines that some credible evidence of alleged abuse or maltreatment exists." SSL § 412(12). A maltreated child is defined by Section 432.1(b) of the applicable regulations (18 NYCRR) as one who is less than eighteen years of age and, in pertinent part:

> (1) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care...
>
> (i) in supplying the child with adequate food, clothing, shelter or education in accordance with the provisions of part 1 of article 65 of the Education Law, or medical, dental, optometrical or surgical care, though financially able to do so or offered financial or other reasonable means to do so; or
>
> (ii) in providing the child with proper supervision or guardianship, by

James Maloney                                         5

unreasonably inflicting or allowing to be inflicted harm, or a substantial
risk thereof, including the infliction of excessive corporal punishment; or
by misusing a drug or drugs; or by misusing alcoholic beverages to the
extent that he loses self-control of his actions; or by any other acts of a
similarly serious nature requiring the aid of the court; provided, however,
that where the parent or other person legally responsible is voluntarily and
regularly participating in a rehabilitative program, evidence that the parent
or other person  legally responsible has repeatedly misused a drug or drugs
or alcoholic beverages to the extent that he loses self-control of his actions
shall not alone establish that the child is a neglected child in the  absence
of evidence establishing that the child's physical, mental or emotional
condition has been impaired or is in  imminent danger of becoming
impaired as set forth in paragraph (1) of this subdivision;

(2) who has been abandoned by his parents or other person legally responsible for
his care; or

(3) who has had serious physical injury inflicted upon him by other than
accidental means.

At the hearing, the Agency has the burden of proving, by a fair preponderance of the

evidence, the maltreatment cited in the indicated report.  To meet this burden, it is required to

prove that: (1) the child's physical, mental or emotional condition was impaired, or was in

imminent danger of becoming impaired;   (2) the parent or custodian failed to exercise a

minimum degree of care under the circumstances in question; and  (3) the parent's or custodian's

failure to exercise the requisite degree of care caused, or threatened, the impairment of the child's

condition.

The essential facts are not in dispute. There is no dispute that the Appellant refused to

surrender to the police officers or allow them in to his home. There is also no dispute that the

family was observed carrying on their daily activities not minding the police officers in front of

their property. The Agency based its indication on the proposition that the Appellant's failure to

surrender himself to the police and the fact that he allowed them to barricade his home for about

twelve hours amounts to maltreatment of his one year old twins that were observed playing and

being fed by their parents. To prove its case, the Agency presented the case notes of the

James Maloney                                          6

investigative caseworker. The progress notes indicated that the children were seen playing and that the family was seen eating their dinner and not paying any attention to the officers out side their home. The Agency opined that the Appellant placed his children at risk of harm for not surrendering to the police when they knocked at his door. Based on that premise, the Agency concluded that the Appellant maltreated his children.

The Appellant testified at the hearing. The Appellant reiterated that when the police officers knocked at his door, he asked them to procure a warrant before he could allow them in to his home or they could just write him up for violation if they felt that he violated any local law. The Appellant stated that he eventually allowed them in to his home and was arrested. The Appellant testified that he was taken to Nassau County Medical Center for evaluation but was discharged that same night because they found out that nothing was wrong with him. The Appellant opined that he did not place his children at any risk of harm. He stated that during the time that the Officers barricaded his property, his family was safe in side the home. In addition, the Appellant testified that the Officers never threatened to forcefully break in to his home or threatened to shoot in to his home.

The question to be addressed in this case is whether the Appellant maltreated ██ and ██ as indicated by the Agency. Based on the evidence presented by the Agency, it failed to prove by a fair preponderance of the evidence that the Appellant maltreated his children by not allowing the police officers in to his home. The fact that the officers barricaded his home for twelve hours while the children were observed playing with their parents does not amount to maltreatment. The Appellant was observed taking care of his children during the period in question. The Agency did not present any evidence to prove that the Officers threatened to forcefully break in to his home. When the Appellant was eventually arrested, he came out side quietly.

James Maloney                                          7

Consequently, in light of the foregoing, the Agency did not meet its burden by a fair preponderance of the evidence establishing that the Appellant failed to exercise the minimum degree of care owed to ███ and ███ Therefore, the Agency failed to prove by a fair preponderance of the evidence that by Appellant's actions on the date in question threatened the physical, mental and emotional condition of one year old ███ and ███.

Accordingly, it is concluded that the allegations of maltreatment against the Appellant contained in the Central Register report have not been established by a fair preponderance of the evidence and as such, the report must be amended from indicated to unfounded and sealed.

**DECISION:**       The request of James Maloney that the record of the report (SCR # 20563456) relating to him being maintained in the Central Register be amended to unfounded is granted. The Central Register and the Agency are directed to amend the report to reflect that it is unfounded, to seal the report in accordance with SSL § 422(8)(e), and to take the actions required by SSL § 422(9).

This decision is made by John Franklin Udochi, Bureau of Special Hearings who has been designated by the Commissioner to make such decisions.

DATED:   Albany, New York

**SEP 2 2 2008**

_____
John Franklin Udochi
Bureau of Special Hearings

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-------------------------------------------------------------------X
JAMES M. MALONEY,

                Plaintiff-Appellant,

        - against -

ANDREW CUOMO, in his official capacity as Attorney
General of the State of New York,
ELIOT SPITZER, in his official capacity as Governor of
the State of New York, and
KATHLEEN A. RICE, in her official capacity as District
Attorney of the County of Nassau, and their successors,

                Defendants-Appellees.
-------------------------------------------------------------------X

**07-0581-cv**

**NOTICE OF ENTRY
AND
DEMAND FOR
RETRACTION OF
APPELLEE'S BRIEF**

**PLEASE TAKE NOTICE** that attached hereto is a true copy of an Order entered by

the Clerk of the Court on November 13, 2007, referring Appellant's motion to strike

Appellee's Brief to the Merits Panel.

**PLEASE TAKE FURTHER NOTICE** that formal demand is hereby made of

KATHLEEN A. RICE, individually and in her official capacity as District Attorney of the

County of Nassau, that Appellee's Brief, dated October 24, 2007, be retracted forthwith

because:

    (1) Appellee's Brief contains, at page 6 thereof, statutorily confidential matter that is

not germane to this appeal, and as such its continued submission amounts to the commission of

a Class A misdemeanor under the provisions of subdivision 12 of § 422 of the New York

Social Services Law and of subdivision 1 of § 195.00 of the New York Penal Code; and

    (2) Continued submission of Appellee's Brief, which will allow said statutorily

confidential matter to be reviewed by the Merits Panel, their staff, and possibly additional

persons, increases the harm suffered by Appellant *Pro Se.*

**PLEASE TAKE FURTHER NOTICE** that this Notice of Entry and Demand for Retraction of Appellee's Brief is being served directly on KATHLEEN A. RICE, individually and in her official capacity as District Attorney of the County of Nassau, in addition to counsel for all parties, because Appellant is an attorney at law subject to the ethical codes applicable to the profession, and accordingly may not *threaten* criminal prosecution in order to advance his position in a civil matter, but *may* report a criminal act and/or demand that it be remedied.

**PLEASE TAKE FURTHER NOTICE** that the within is intended to serve as notice, report and complaint to the District Attorney of the County of Nassau of the commission of a Class A misdemeanor by one or more public servants under the provisions of subdivision 12 of § 422 of the Social Services Law and of subdivision 1 of § 195.00 of the Penal Code.

Dated:      November 19, 2007
             Port Washington, New York

                                     JAMES M. MALONEY
                                     Appellant *Pro Se*
                                     33 Bayview Avenue
                                     Port Washington, NY 11050
                                     maritimelaw@nyu.edu
                                     www.nunchakulaw.com

TO:    The Honorable Kathleen M. Rice
       Nassau County District Attorney
       262 Old Country Road
       Mineola, NY 11501        By Certified Mail No. 7004 2510 0000 5910 8970

       C. Cecelia Chang, Esq.
       Assistant Solicitor General
       120 Broadway
       New York, NY 10271     By Certified Mail No. 7004 2510 0000 5910 8987

       Karen Hutson, Esq.
       Deputy County Attorney
       1 West Street
       Mineola, NY 11501        By Certified Mail No. 7004 2510 0000 5910 8994

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse at Foley Square     40 Centre Street, New York, NY 10007   Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): __07-0581-cv__

Caption [use short title]

Motion for: __strike appellee's brief__

James M. Maloney,

Plaintiff-Appellant,

-against-

Set forth below precise, complete statement of relief sought:

__Strike brief as violative of Local Rule__

__28(1) and of NY Social Services Law; refer__

__to Committee on Admissions and Grievances.__

Andrew Cuomo et al.,

Defendants-Respondents.

MOVING PARTY: __James M. Maloney__          OPPOSING PARTY: __Kathleen A. Rice__

☑ Plaintiff        ☐ Defendant                                    __Nassau County District Attorney__
☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: __James M. Maloney, Esq.__   OPPOSING ATTORNEY (Name): __Karen Hutson, Esq.__
[name of attorney, with firm, address, phone number and e-mail]   [name of attorney, with firm, address, phone number and e-mail]

__Law Office of James M. Maloney__                      __Deputy County Attorney, Nassau County__

__33 Bayview Avenue, Port Washington, NY 11050__    __1 West Street, Mineola, NY 11501__

__(516) 767-1395  maritimelaw@nyu.edu__              __(516) 571-2461   khutson@nassaucountyny.gov__

Court-Judge/Agency appealed from: __Eastern District of New York - Hon. Arthur D. Spatt.__

Please check appropriate boxes:                         FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                                        INJUNCTIONS PENDING APPEAL:
Has consent of opposing counsel:                        Has request for relief been made below?    ☐ Yes   ☐ No
   A. been sought?          ☐ Yes   ☑ No
   B. been obtained?        ☐ Yes   ☑ No               Has this relief been previously sought
                                                        in this Court?                             ☐ Yes   ☐ No
Is oral argument requested?   ☐ Yes   ☑ No
(requests for oral argument will not necessarily be granted)   Requested return date and explanation of emergency:

Has argument date of appeal been set?   ☐ Yes   ☑ No
If yes, enter date _____

Signature of Moving Attorney: _[signature]_   Date: __10/26/07__   Has service been effected?  ☑ Yes   ☐ No
                                                        [Attach proof of service]

ORDER    *Motion is referred to the merits panel.*

IT IS HEREBY ORDERED THAT the motion is ~~GRANTED~~ ~~DENIED.~~

                                                        FOR THE COURT:
                                                        Catherine O'Hagan Wolfe, Clerk of Court

Date: _____                                      By: _[signature]_
                                                        Joy Fallek, Administrative Attorney

Form T-1080 (Revised 10/31/02).

# JAMES M. MALONEY
### ATTORNEY AT LAW
### PROCTOR IN ADMIRALTY

ADMITTED TO PRACTICE IN:
NEW YORK; NEW JERSEY;
U.S. SUPREME COURT;
U.S. COURTS OF APPEALS FOR THE
SECOND AND THIRD CIRCUITS;
U.S. DISTRICT COURTS FOR THE
DISTRICT OF CONNECTICUT;
NORTHERN DISTRICT OF ILLINOIS;
DISTRICT OF NEW JERSEY;
EASTERN, NORTHERN & SOUTHERN
DISTRICTS OF NEW YORK;
COURT OF INTERNATIONAL TRADE;
COURT OF FEDERAL CLAIMS.

TEL: (516) 767-1395
FAX: (516) 767-1326

E-MAIL ADDRESS:
**maritimelaw@nyu.edu**

P.O. Box 551
33 BAYVIEW AVENUE
PORT WASHINGTON, NY 11050

August 4, 2008

*CONFIDENTIAL*

The Honorable Kathleen M. Rice
Nassau County District Attorney
262 Old Country Road
Mineola, NY 11501

Dear District Attorney Rice:

The enclosures are being sent in an envelope marked "personal and confidential" to ensure that they receive your personal attention.

Were I in your position, I would certainly wish to be informed if an attorney acting on my behalf were, in the course of that representation, to disclose confidential information in violation of § 422 of the New York Social Services Law, which provides at subdivision 12:

> Any person who willfully permits and any person who encourages the release of any data and information contained in the central register to persons or agencies not permitted by this title shall be guilty of a class A misdemeanor.

Similarly, if I were the DA I would also wish to be informed if an attorney acting on my behalf were, in so acting, to write a letter to a court stating *as fact* a false allegation of a criminal act that was never proven, was unconditionally dismissed five years ago, and was in no way germane to the matter before the court in the context of which the statement was made.

As indicated by the enclosures, such is the case, and there is no indication that such behavior, which began in October 2007 and has continued at least through July 2008, is likely to stop unless and until I widely publicize it, which is something I remain hesitant to do for the sake of both your reputation and mine.

Respectfully,

James M. Maloney

# JAMES M. MALONEY
## ATTORNEY AT LAW
### PROCTOR IN ADMIRALTY

ADMITTED TO PRACTICE IN:
NEW YORK; NEW JERSEY;
U.S. SUPREME COURT;
U.S. COURTS OF APPEALS FOR THE
SECOND AND THIRD CIRCUITS;
U.S. DISTRICT COURTS FOR THE
DISTRICT OF CONNECTICUT;
NORTHERN DISTRICT OF ILLINOIS;
DISTRICT OF NEW JERSEY;
EASTERN, NORTHERN & SOUTHERN
DISTRICTS OF NEW YORK;
COURT OF INTERNATIONAL TRADE;
COURT OF FEDERAL CLAIMS.

TEL: (516) 767-1395
FAX: (516) 767-1326

E-MAIL ADDRESS:
**maritimelaw@nyu.edu**

P.O. BOX 551
33 BAYVIEW AVENUE
PORT WASHINGTON, NY 11050

September 29, 2008

The Honorable Kathleen M. Rice
Nassau County District Attorney
262 Old Country Road
Mineola, NY 11501

Re:   Appellee's Brief, *Maloney v. Cuomo et al.*
        Docket No. 07-0581-cv (Second Circuit)
        Disclosure violative of SSL § 422(12), etc.

Dear District Attorney Rice:

Further to my letter to you dated August 4, 2008 (true copy attached), enclosed is a redacted but otherwise true copy of a September 22, 2008, decision of the New York State Office of Children and Family Service's Bureau of Special Hearings. The names of my children, the identifying number of the report, and the recitation of the contents of the initial report (many parts of which, as reflected in the Nassau County Department of Social Services case worker's notes upon which the decision was based, were subsequently admitted to have been inaccurate by the very person who made the initial report) have all been redacted. The decision holds that my having been listed on the New York State Central Register of Child Abuse and Maltreatment (hereinafter, the "Register"), as was the case for nearly eight years, was all along unsupported by a fair preponderance of the evidence. Please read the enclosed decision.

As I previously attempted to bring to your attention via the enclosures to my August 4, 2008, letter (including my Notice of Entry and Demand for Retraction of Appellee's Brief that was first served on you by Certified Mail in November 2007), the unauthorized and unjustified public disclosure--by a public official--of my having been listed on the Register (which disclosure was made on your behalf by Karen Hutson, Esq. at page 6 of the Brief) would appear to constitute commission of one or more Class A misdemeanors under the provisions of subdivision 12 of § 422 of the Social Services Law and/or of subdivision 1 of § 195.00 of the Penal Code.

This will be my last request for your assistance in this matter. I have received no response to my August 4, 2008, letter; if this letter is equally ineffective I shall assume that you have no interest in righting a wrong perpetrated on your behalf, presumably with your knowledge and consent and certainly with your *post hoc* approval.

Respectfully,

James M. Maloney