UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

STEPHEN NUCCIO,
                       Plaintiff,

      - against -                                    **7:13-CV-1556 (MAD) (TWD)**

NICOLE DUVÉ, in her official capacity as District
Attorney of the County of Saint Lawrence, New York

                       Defendant.

------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO MOTION**


                                                      Carolyn E. Weissbach (518801)
                                                      *Counsel for Plaintiff*
                                                      P.O. Box 23
                                                      Houghton, MI 49931
                                                      Telephone: (906) 370-3173
                                                      Email: weissbach@chartermi.net

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

COUNTERSTATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I

     THE "FIRST-FILED" RULE IS INAPPLICABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT II

     IT WOULD BE UNJUST TO STAY THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

INTRODUCTION

This memorandum of law is submitted in opposition to Defendant's motion for dismissal or, in the alternative, for an indefinite stay of all proceedings. This action seeks no relief other than declaratory judgment (specifically, a declaration that those portions of sections 265.00 through 265.02 of the New York Penal Law ("NYPL"), to the extent that those statutes define and punish as a crime the simple possession of nunchaku[1] within one's home, are unconstitutional and of no force and effect). Further, this action does not challenge the application of those statutes to the possession of nunchaku in any location other than the would-be possessor's home. The Plaintiff, Mr. Nuccio, owns and resides in a private home in Saint Lawrence County, and was prosecuted and convicted by the Defendant for his simple possession of nunchaku in that home. Given the above-described limited relief sought, the Defendant in this action, the Saint Lawrence County District Attorney,[2] is sued only in her official capacity.

Conversely, the Maloney Litigation (a term defined at page 1 of Movant's Brief) names the Nassau County District Attorney in both her official capacity and individually, and seeks considerably more than declaratory judgment. *See* Movant's Exhibit 3 (Second Amended Verified Complaint in *Maloney v. Rice*) at ¶¶ 2 (capacity sued), ¶¶ 54-87 (setting forth factual

---

[1] "Nuchaku" (a term sometimes used for both singular and plural, and sometimes pluralized "nunchakus"), also known as "nunchaku sticks," are martial-arts weapons "originally designed as a farmer's tool used to separate chaff from the grain, similar to a thresher. However, nunchakus developed into a defensive weapon against the samurai's sword." *State v. Muliufi*. 64 Haw. 485, 489, 643 P.2d 546, 549 (Hawaii 1982). New York Penal Law § 265.00 uses the term "chuka sticks," defining them as "any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking . . ."

[2] Subsequent to the filing of the complaint in this action, the named defendant District Attorney, Nicole Duvé, has been succeeded by Mary Rain, but the caption has not been amended.

background relating to third cause of action, in which the Nassau County District Attorney is sued individually), and Exhibits 3-6 (relating to third cause of action).  Moreover, and very significantly, the Maloney Litigation does *not* involve a plaintiff who was ever convicted of a misdemeanor, as was Mr. Nuccio.  For that reason, the Maloney Litigation has not maintained a challenge to the provisions of NYPL § 265.02, which treats possession of "chuka sticks" as a felony if the defendant "has been previously convicted of any crime."  See Exhibit 1 to Declaration of James M. Maloney submitted herewith (transcript of October 24, 2013, status conference in *Maloney v. Rice*) at page 8, lines 4-17 (admission as to *pro se* plaintiff's lack of standing to challenge NYPL § 265.02, and Court's acknowledgment of same).

      Thus, the Maloney Litigation that is pending in the Eastern District and the *Nuccio* case now before this Court differ in several respects.  Most significantly (and dispositively as to the instant motion), a successful outcome on the declaratory judgment prong of the Maloney Litigation would *not* have the effect of protecting any right Mr. Nuccio may have to keep nunchaku in his home, because the Maloney Litigation does not and cannot challenge the provisions of § 265.02.  Nevertheless, that felony provision would still apply to Mr. Nuccio, who has been "previously convicted of [the] crime" of possession of "chuka sticks."  That the prohibition of such possession under § 265.01 may be struck down in the Maloney Litigation would not help Mr. Nuccio, because he has *already* been convicted.  As Movant correctly asserts, "Plaintiff is not requesting that this Court overturn his conviction, and he acknowledges that the prospective declaration sought in this case will not invalidate Plaintiff's conviction."  Movant's Brief at 2-3.  Thus, a favorable declaration in the Maloney Litigation—even if affirmed all the way up to and including the Supreme Court of the United States—would still not guarantee Mr. Nuccio his sought-after right to possess nunchaku in his home in Saint Lawrence County.

COUNTERSTATEMENT OF FACTS

Movant's Brief at page 4 (concluding the Statement of Facts) states: "The parties in the Maloney Litigation have filed and briefed their respective motions for summary judgment, seeking a determination on the *exact issues* [emphasis added] raised in this case." Earlier on in the Statement of Facts, Movant states:

> Plaintiff [Nuccio] is only seeking: (1) a declaration that New York Penal Law §§ 265.00 and 265.02 are unconstitutional; and (2) an award of attorneys' fees under 42 U.S.C. § 1988. However, Mr. Nuccio's counsel is currently seeking *the same declaration* in the Maloney Litigation . . ."

*Id.* at 3 (emphasis added) (citation to pleading omitted).

The above is incorrect in one very important respect: this case does not seek "the same declaration" as in the Maloney Litigation. As noted in the preceding section, the Maloney Litigation does not and cannot challenge the provisions of NYPL § 265.02. However, this action does exactly that, and in that respect includes the following specific allegation in the operative (and long-unanswered) pleading:

> Under New York Penal Law §§ 265.00 through 265.01, New York's treatment of its citizens who have no previous criminal record, if found guilty of possessing nunchaku in their homes, "far from imposing a minor fine, threatens citizens with a year in prison," *District of Columbia v. Heller*, 554 U. S. 570, 634 (2008), and therefore renders this case or controversy far from *de minimis*. **Plaintiff is now subject to even more severe criminal penalties under New York Penal Law § 265.02 (a felony) should he ever possess nunchaku in the Home again, which he wishes to do.**

Complaint at ¶ 22 (emphasis added in bold).

For the reasons described in the preceding section, the Maloney Litigation is, rather ironically, wholly incapable of helping Mr. Nuccio—who, unfortunately, has already been convicted—in his quest to possess nunchaku in his home lawfully by striking down the

3

application of NYPL § 265.02 to his in-home possession.

Likewise but also in a broader sense, it is also incorrect to describe the pending motions for summary judgment in the Maloney Litigation as "seeking a determination on the exact issues raised in this case." Movant's Brief at page 4. In addition to the above-discussed § 265.02 distinction, in the Maloney Litigation there are pending cross-motions for partial or total summary judgment on the third cause of action, in which the Nassau County District Attorney is being sued individually. *See, e.g.*, Exhibit 1 to Declaration of James M. Maloney submitted herewith (transcript of October 24, 2013, status conference in *Maloney v. Rice*), at page 10, line 2, through page 14, line 9 (discussing motion and cross-motion in the context of the separate causes of action, along with scheduling and page limitations).

In sum, Movant's Statement of Facts grossly misstates the supposedly "identical" nature of the two cases, ignoring not only the highly significant NYPL § 265.02 distinction, which makes the Maloney Litigation of no help to Mr. Nuccio, but also downplaying the fact that this case is in most respects far simpler and more straightforward than is the Maloney Litigation, which includes an additional (and rather legally and factually complex) cause of action as against the Nassau County District Attorney individually.

ARGUMENT

POINT I

THE "FIRST-FILED" RULE IS INAPPLICABLE

Movant seeks, in the first instance, dismissal under Rule 12(b)(3) of the Federal Rules of Civil Procedure, claiming to invoke the "first-filed" rule as a basis for purportedly "improper" venue. As an initial observation, it is worth noting that the United States Supreme Court recently wrote the following about the parameters of Rule 12(b)(3) and "improper" venue:

> Rule 12(b)(3) allow[s] dismissal *only* when venue is "wrong" or "improper." Whether venue is "wrong" or "improper" depends *exclusively* on whether the court in which the case was brought satisfies the requirements of federal venue laws . . . .

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 134 S. Ct. 568, 576 (2013) (emphasis added).

The Court next examined the generally applicable federal venue provision:

> This question whether venue is "wrong" or "improper" is generally governed by 28 U.S.C. § 1391. . . . That provision states that "[e]xcept as otherwise provided by *law* . . . this section *shall* govern the venue of *all* civil actions brought in district courts of the United States." § 1391(a)(1) (emphasis added). It further provides that "[a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b). When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b).

*Atlantic Marine*, 134 S. Ct. at 577 (footnotes omitted).

5

Similarly, that a "similar" case exists in another venue involving different parties but raising comparable constitutional challenges, has no bearing whatsoever on whether a case falls into one of the categories of cases listed in § 1391(b).  Here, the Northern District is the "judicial district in which defendant resides," § 1391(b)(1), and it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," § 1391(b)(2), so venue is not "wrong" or "improper" in any sense, and Rule 12(b)(3) is not, under the clear teaching of *Atlantic Marine*, a valid basis upon which to move for dismissal.  On this basis alone, the Rule 12(b)(3) motion should be denied.

Nevertheless, Movant's specific arguments in favor of dismissal must be addressed.  Movant posits that the "first-filed" rule, which "advances judicial economy and protects parties from the risk of unnecessary expense and inconsistent judgments arising from duplicative litigation," applies here.  Brief at 4.

But it is axiomatic that the "first-filed" rule requires at least some commonality of parties.  Movant herself admits as much, writing at page 4 (emphasis added): "Under this first-filed rule or federal comity doctrine, a district court will ordinarily decline to hear an action when a previously filed case presents overlapping issues *and parties* . . . ."  But, of course, there are *no* common parties as between this case and the Maloney Litigation.³

Movant begins her substantive argument essentially by ignoring this distinction, citing *First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1979), for the general proposition that "where there are two competing lawsuits, the first suit should have priority and the second should not proceed."  Movant's Brief at 4.  However, in *Simmons*, as in <u>all</u> the other

---

³ As Movant correctly notes, Plaintiff's lead attorney here is the *pro se* litigant in the Maloney Litigation.  Movant's Brief at 1 ("In fact, the claimant in the Maloney Litigation is Mr. Nuccio's counsel in this case.").  For a response to the implications, see discussion at the end of this Point, *infra* at page 8.

6

cases Movant cites in putative support of application of the "first-filed" rule here, the "competing lawsuits" involved some or all of the *same parties*.[4]

Recognizing that the lack of commonality of any parties mandates against the applicability of the "first-filed" rule here (but still not discouraged), Movant continues:

> The fact that Mr. Nuccio is not a party to the Maloney Litigation is of no moment because *he is not seeking any relief specific to himself*. (COMPL. ¶ 24) ("Plaintiff is not requesting that this court overturn his conviction in state court, nor would the prospective declaration sought in this case invalidate Plaintiff's conviction . . . ."). *If the plaintiff is successful in the Maloney Litigation, Mr. Nuccio will receive all of the relief he is requesting – i.e., the statutes will have been declared invalid*. The only difference between the Maloney Litigation and this case is that Defendant will be subject to an attorneys' fees claim under 42 U.S.C. § 1988. But counsel's second attempt at attorneys' fees on the same issue should not be a catalyst for allowing this duplicative litigation to persist. In fact, if this litigation were to move forward, it would *run the risk of creating inconsistent determinations on the same issue*. Better to have one voice on the subject.

Movant's Brief at 5 (emphasis added).

Movant is greatly mistaken in positing that Mr. Nuccio is not seeking any relief specific to himself and that "[i]f the plaintiff is successful in the Maloney Litigation, Mr. Nuccio will receive all of the relief he is requesting – i.e., the statutes will have been declared invalid." As explained at the outset of this brief (but worth reiterating here), the Maloney Litigation does not and cannot challenge the felony provisions of NYPL § 265.02, which would still apply to Mr.

---

[4] In *Simmons*, the plaintiff-appellant bank had brought actions against the two defendant-appellee individuals (consolidated on appeal) seeking repayment of promissory notes in both the Southern District of New York and the Western District of Oklahoma. 878 F.2d at 77. In *Comedy Partners v. Street Players Holding Corp.* 34 F. Supp.2d 194 (S.D.N.Y. 1999), one party (Street Players) had filed suit against the other (Comedy Partners) in the Central District of California, following which Comedy Partners sued Street Players in the Southern District of New York. In *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952), C-O-Two Fire Equipment Co. had amended a complaint in the Northern District of Illinois to name Kerotest as a defendant after Kerotest had sued C-O-Two Fire Equipment Co. in the District of Delaware. Further illustration of the commonality of parties in *all* the remaining cases cited in Movant's Brief on this point is provided in tabular form in the Appendix hereto.

Nuccio, who has been "previously convicted of [the] crime" of possession of "chuka sticks." Thus, Mr. Nuccio will not receive *any* meaningful relief even if the Maloney Litigation is successful: he would still be prohibited from possessing nunchaku in his home because he has previously been convicted of a crime. In this case—but not in the Maloney Litigation—NYPL § 265.02, the felony provision, is being challenged.

Moreover, "inconsistent determinations on the same [legal] issue" are quite different from inconsistent determinations as to the rights of specific parties. Whereas avoidance of the latter is the very concern that has led to such doctrines as *res judicata* and collateral estoppel, our common-law legal system welcomes robust disagreement among courts (and sometimes even among judges on the same court) on issues of *law*, with uniformity eventually being achieved as cases move up the appellate ladder. That this Court and the Eastern District may disagree on points of law common to both cases is not in any sense a "risk" (which is how Movant portrays it, see block-quoted passage above), nor is it a legitimate basis for avoiding decision on the issues squarely presented to this Court in this case. Indeed, differing judicial opinions, were they to be rendered, would likely inform the Second Circuit and perhaps eventually the United States Supreme Court when and if those federal appellate courts were to reach the underlying issues.

Since the "first-filed" rule is clearly inapplicable here, Movant's "special circumstances" arguments need not be addressed (but the cases are included in the Appendix, *q.v.*).

It is worthwhile, however, to address briefly a subtextual argument contained in Movant's brief. At page 5 (and also reproduced in the above block-quoted passage), Movant writes:

> The only difference between the Maloney Litigation and this case is that Defendant will be subject to an attorneys' fees claim under 42 U.S.C. § 1988. But counsel's second attempt at attorneys' fees on the same issue should not be a catalyst for allowing this duplicative litigation to persist.

The subtextual argument appears to be that even though there are no common *parties* between this action and the Maloney Litigation, the fact that lead counsel for Plaintiff in this case is himself the plaintiff in the other action should weigh in favor of declaring this one "duplicative" of the other, especially (it is implied) because counsel for Plaintiff here may "have an attorneys' fees claim under 42 U.S.C. § 1988" where in the *pro se* matter he would of course have none.  Movant neither develops these propositions in detail nor cites any cases in support of them, but nonetheless very clearly plants the seed (or perhaps adds a "catalyst," to borrow Movant's word) for this Court's consideration of them, raising the need for a modest rebuttal.

Were this court to entertain the argument that the commonality between an *attorney* in this case and a *party* in the Maloney Litigation should provide a valid basis for applying the "first-filed" rule (as Movant indeed appears to suggest), it would have the practical effect of denying Mr. Nuccio his free choice of counsel.[5]  Although this is not a criminal case, where freedom of choice of counsel rises to a constitutional level because of Sixth Amendment concerns, this case does have obvious criminal-law overtones, and in any event the right to free choice of counsel is recognized by federal courts in civil matters as well as criminal ones.  *See, e.g., Matter of Allied Artists Pictures Corp.*, 17 B.R. 288, 292 (S.D.N.Y. Bkrtcy. 1982) (possible appearance of impropriety outweighed by a client's right to counsel of choice).

---

[5] In that regard, the Court's attention is respectfully directed to the Declaration of Stephen Nuccio submitted herewith, particularly to paragraphs 2 and 3 ("2. After being convicted in June 2013 of a misdemeanor for possession of nunchaku ('chuka sticks') in my home, I did some research online and learned of the case currently entitled *Maloney v. Rice*, in which James M. Maloney was and is challenging New York's ban on possession of nunchaku in one's own home."; "3. I sought the assistance of Mr. Maloney, whom I had not known before my trial or conviction, because of his involvement in that case.").  See also paragraph 6 (noting that "the attorney I have chosen to represent me has more experience than most in certain legal issues relevant to my case.").

POINT II

IT WOULD BE UNJUST TO STAY THIS ACTION

Movant "requests that the Court stay proceedings here until the outcome of the motions for summary judgment *and any subsequent appeals* in the Maloney Litigation." Brief at 9 (emphasis added). Movant proposes such a stay (which would likely be in effect for years)[6] on the dually flawed theory that "it appears that Mr. Nuccio has no private interest in proceeding expeditiously, as the Court in the Maloney Litigation is likely to reach a result much quicker than would ever be possible in this case." Movant's Brief at 9. As explained in the footnote below, a post-final-decision, post-appeal "result" in the Maloney Litigation would by no means be "quicker," and the argument that Mr. Nuccio has "no private interest in proceeding expeditiously" is thoroughly refuted by the fact, detailed at length herein, that even a successful ultimate outcome on the declaratory judgment prong of the Maloney Litigation would *not* have the effect of protecting Mr. Nuccio's sought-after right to keep nunchaku in his home, because the Maloney Litigation does not and cannot challenge the provisions of NYPL § 265.02, which apply to Mr. Nuccio and would prevent him from possessing nunchaku in his home even if a comparable application of NYPL § 265.01 were to be held unconstitutional in the Maloney Litigation.

---

[6] Given the substantial likelihood that any final decision in the Maloney Litigation (which itself may be years away given the existence in that case of a third cause of action in which the Nassau County District Attorney is sued individually, see discussion at 1-2, *supra*) will be appealed, probably as far as seeking *certiorari* before the United States Supreme Court, which has occurred once before in that case, a stay in this action until after the entry of a final order in the Maloney Litigation and the exhaustion of all appeals would almost certainly deny Mr. Nuccio an opportunity to pursue the relief he seeks for many years. The delay is, of course, only magnified by the fact that a favorable declaration in the Maloney Litigation—even if affirmed all the way up to and including the United States Supreme Court—would still not guarantee Mr. Nuccio his sought-after right to possess nunchaku in his home in Saint Lawrence County because he would still be constrained by the provisions of NYPL § 265.02, which the Maloney Litigation does not and cannot challenge. But only after the stay in this action were lifted could Mr. Nuccio even *begin* to mount that constitutional challenge.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that this Court should DENY Defendant's motions.

Dated: June 13, 2014
      Houghton, Michigan

                                            Respectfully submitted,

                                             /s  Carolyn E. Weissbach
                                            Carolyn E. Weissbach (518801)
                                            Counsel for Plaintiff
                                            P.O. Box 23
                                            Houghton, MI 49931
                                            Telephone: (906) 370-3173
                                            Email: weissbach@chartermi.net