UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JAMES M. MALONEY,

               Plaintiff,

        - against -                    **MEMORANDUM & OPINION**

MADELINE SINGAS, in her official capacity        Case No. 03 CV 786 (PKC)
as Acting District Attorney of Nassau County,

               Defendant.
-------------------------------------------------------X

PAMELA K. CHEN, United States District Judge:

     Since 1974, New York has banned the possession of chuka sticks, a martial arts weapon consisting of a rope or chain between two sticks. Under New York law, possession of chuka sticks constitutes a class A misdemeanor. *See* N.Y. Penal Law § 265.01 ("A person is guilty of criminal possession of a weapon in the fourth degree when: (1) He or she possesses any . . . chuka stick . . . ."); *id*. at § 265.00(14) (defining chuka stick).[1] Plaintiff James Maloney, an attorney and martial arts practitioner, filed this action in 2003, seeking a declaration that New York's ban on the possession of chuka sticks is unconstitutional. Though the Honorable Arthur D. Spatt dismissed Maloney's constitutional claims relating to the ban in 2007, and was affirmed on appeal in 2010, the United States Supreme Court vacated the judgment and remanded the case later that year for further consideration in light of its decision in *McDonald v. City of Chicago*, 561 U.S. 742 (2010). *See Maloney v. Rice*, 561 U.S. 1040 (2010).

---

[1] "'Chuka stick' means any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking. These devices are also known as nunchakus and centrifugal force sticks." N.Y. Penal Law § 265.00(14). The Court shall refer to chuka sticks and nunchakus interchangeably.

Upon remand, Maloney filed a Second Amended Complaint, adding a Section 1983 claim to his constitutional challenge to the chuka stick ban. The parties now cross-move for summary judgment. For the reasons set forth below, the Court denies summary judgment to both parties on Maloney's Second Amendment claim (Count One), dismisses Maloney's claim based on the Ninth and Fourteenth Amendments (Count Two), and grants summary judgment to Singas, the Acting Nassau County District Attorney ("the District Attorney"), on Maloney's Section 1983 due process claim (Count Three).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the parties' submissions and prior proceedings in this case, which are not altered by the *vacatur* of Judge Spatt's 2007 decision dismissing Maloney's Second Amendment claim.[2]

### A.      Second Amendment Challenge to New York's Chuka Stick Ban

Maloney is a long-time practitioner of the martial arts.[3] (Dkt. 136, Declaration of James M. Maloney ("Maloney Decl."), ¶ 6; *see also* Second Am. Compl., ¶¶ 13–14). He asserts, and the District Attorney does not dispute, that chuka sticks are an integral part of his martial arts practice and his philosophy of home defense. (Maloney Decl., ¶ 6). In 2000, he was charged

---

[2]      Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual assertion undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents. Citations to "ECF" herein refers to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

[3]      Maloney is representing himself in this case. Because Maloney is an attorney, Judge Spatt previously held that Maloney is not entitled to the less rigorous standard of review ordinarily afforded to *pro se* plaintiffs. *Maloney v. Cuomo*, 470 F. Supp. 2d 205, 209 (E.D.N.Y. 2007), *aff'd*, 554 F.3d 56 (2d Cir. 2009), *cert. granted, judgment vacated sub nom. Maloney v. Rice*, 561 U.S. 1040, and *vacated*, 390 F. App'x 29 (2d Cir. 2010). The Court does not view the Supreme Court's *vacatur* order as disturbing that determination.

with a violation of New York Penal Law § 265.01 ("Section 265.01") for possessing chuka sticks in his home. (Dkt. 134, Plaintiff's Rule 56.1 Statement ("Pl. 56.1"), ¶ 1).[4] The charge against him was ultimately dismissed in 2003.[5] (*See also* Second Am. Compl., ¶ 11).

Maloney filed this action shortly after the dismissal of the charge against him. Maloney initially challenged New York's prohibition against in-home possession of chuka sticks under the First, Second and Ninth Amendments of the U.S. Constitution. (*See* Dkt. 1, Complaint). In 2007, Judge Spatt granted the defendants' motion to dismiss, disposing of Maloney's constitutional challenges to the ban. *Maloney*, 470 F. Supp. 2d 205.[6] Of relevance to the cross-motions currently pending before this Court, the Second Circuit upheld the dismissal of Maloney's Second Amendment challenge to the ban because, at the time, the Second Amendment applied only to limitations the federal government imposed on the right to bear arms. *Maloney v. Cuomo*, 554 F.3d 56, 58–59 (2d Cir. 2009). Though the Supreme Court had

---

[4]   Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents. Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

[5]   As Judge Spatt noted in his earlier decision, the Section 265.01 charge against Maloney was dismissed in exchange for his guilty plea to one count of disorderly conduct, agreement to the destruction of his chuka sticks, and payment of a fine. *Maloney*, 470 F. Supp. 2d at 208.

[6]   Notably, Maloney initially named then-Attorney General Andrew Cuomo and then-Governor Eliot Spitzer as defendants in his suit, but upon their motion, Judge Spatt dismissed them from the action because Maloney lacked standing to sue them. *Maloney*, 470 F. Supp. 2d at 211 (affirming its August 2005 ruling that the Attorney General and Governor are not proper defendants because Plaintiff has no reasonable fear of prosecution by these officials, as opposed to the District Attorney, and rejecting Plaintiff's argument that his request for "contingent equitable relief" creates standing on Plaintiff's part against the Attorney General). The Court does not find that this ruling was disturbed by the *vacatur* order. Thus, the only defendant remaining in this case is the District Attorney of Nassau County in her official capacity, previously Kathleen Rice and now Madeline Singas (who is serving as Acting District Attorney). The Court has automatically substituted Ms. Singas as the defendant pursuant to Rule 25 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 25(d).

recognized an individual right to bear arms in *District of Columbia v. Heller*, the Supreme Court had not yet applied that right to the States at the time of Maloney's challenge. *See id.* (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)).

Maloney petitioned the Supreme Court for *certiorari*. While Maloney's petition was pending, the Supreme Court heard and decided *McDonald v. City of Chicago*, 561 U.S. 742 (2010), which applied the Second Amendment right to keep and bear arms to the States. The day after the decision issued in *McDonald*, the Supreme Court granted Maloney's petition, vacated the Second Circuit's 2009 decision, and remanded the case to the Second Circuit for further consideration in light of *McDonald*. *See Maloney*, 561 U.S. 1040. The Second Circuit vacated the judgment of the district court dismissing Maloney's claims, and remanded Maloney's case to this Court for proceedings consistent with *McDonald*. *Maloney v. Rice*, 390 F. App'x 29 (2d Cir. 2010).

## B. Addition of Section 1983 Claim

Maloney amended his complaint after the Second Circuit remanded his case back to this Court, adding a claim asserting a deprivation of his due process rights under 42 U.S.C. § 1983. Count Three of the Second Amended Complaint alleges that, in a brief to the Second Circuit, the District Attorney unlawfully disclosed the fact that Maloney had been listed on the New York State Child Abuse and Maltreatment Register ("the Register"). (Second Am. Compl., ¶¶ 54–61; Pl. 56.1, ¶ 4).[7]

---

[7] Maloney formally brings his claim under 42 U.S.C. § 1983, but his allegation that the District Attorney violated his due process rights is premised in part on "those rights protecting the individual from disclosure of statutorily confidential information contained in the [Register]." (*See* Second Am. Compl., ¶¶ 58, 60). Maloney's claim thus references New York Social Services Law § 422(12), which provides that "any person who willfully permits . . . the release of any data and information contained in the [Register] to persons or agencies not permitted by this title shall be guilty of a class A misdemeanor." N.Y. Soc. Serv. § 422(12).

The District Attorney does not dispute that the "disclosure" was made, but notes that her brief made such "disclosure" by citing to a 2007 decision by the Honorable Sandra L. Townes in a separate case filed by Maloney in this Court. (*See* Dkt. 138, Defendant's Rule 56.1 Counterstatement ("Def. 56.1") at ECF 2 ¶ 4; *see also* Dkt. 102-1 at ECF 11, Brief of District Attorney Rice, *Maloney v. Cuomo*, No. 07-5081-cv (2d Cir. Oct. 25, 2007)). Maloney's own complaint in that case, *Maloney v. County of Nassau*, No. 03 CV 4178 (E.D.N.Y.), included a claim directly challenging his listing on the Register. *See Maloney v. County of Nassau*, 623 F. Supp. 2d 277, 283 (E.D.N.Y. 2007), *order clarified on reconsideration,* No. 03-CV-4178, 2009 WL 922064 (E.D.N.Y. Mar. 31, 2009).[8]

---

[8]       On August 23, 2000, two plainclothes officers went to Maloney's home to respond to an allegation by a telephone maintenance worker that Maloney had threatened him with a rifle while the worker was on Maloney's property. *Maloney*, 623 F. Supp. 2d at 280. Although the officers demanded that Maloney come outside the house, he refused to do so. *Id.* at 280–81. The officers summoned additional officers and a hostage negotiation team, and attempted to persuade Maloney to exit the house. *Id.* at 281. Maloney finally surrendered 12 hours later. *Id.* After Maloney's surrender, the police entered his home, where they found the chuka sticks that are the subject of this action. *Id.*; *Maloney*, 470 F. Supp. at 207–08.

      Because Maloney's two young sons were home at the time of the incident, the New York State Office of Children and Family Services ("OCFS") investigated Maloney for possible child abuse. *Maloney*, 623 F. Supp. 2d at 281. An initial report of maltreatment, made on August 28, 2000, was investigated by the Nassau County Department of Social Services. (*See* Dkt. 116–4 at ECF 3, *In the Matter of the Appeal of James Maloney*, Decision After Hearing, State of New York Office of Children and Family Services, ID 22619 (Sept. 28, 2008)). On April 21, 2001, the Nassau County Department of Social Services found that "the report against [Maloney] for inadequate guardianship of [his sons]" was "indicated," (*id.*), *i.e.*, that "some credible evidence" of alleged abuse or maltreatment existed. (*Id.* at ECF 4 (quoting N.Y. Soc. Serv. § 412(12)).

      Maloney requested that the report about him on the Register be amended, but no action was taken from 2001 through 2003. Four months after Maloney filed *Maloney v. County of Nassau*, OCFS scheduled a hearing on his request to amend the report. *Maloney*, 623 F. Supp. 2d at 296. Maloney elected to proceed with his federal lawsuit, rather than pursue the hearing before OCFS. After Judge Townes dismissed his claim challenging his listing on the Register, a hearing was held before OCFS in 2008, roughly seven years after Maloney was first listed on the Register. *Maloney*, 2009 WL 922064, at *6. OCFS issued a decision on September 28, 2009, finding that the Nassau County Department of Social Services "failed to prove by a fair preponderance of the evidence that [Maloney] had maltreated his children by not allowing the

The District Attorney points out that Maloney's complaint in *Maloney v. County of Nassau* explicitly stated that he "was investigated by the State of New York Office of Children and Family Services for alleged maltreatment of his two infant sons" and that "said investigation was deemed 'Indicated,' which creates a permanent record . . . indicating that Plaintiff has been investigated for possible child abuse." (Def. 56.1 at ECF 3 ¶ 1 (citing Verified Complaint at ¶¶ 32–33, *Maloney v. County of Nassau*, No. 03 CV 4178)). Judge Townes dismissed Maloney's due process challenge to his listing on the Register, finding that his claim was conclusorily pled. *See Maloney*, 623 F. Supp. 2d at 299. Furthermore, Judge Townes noted that Maloney could not adequately plead a due process claim because he had a meaningful post-deprivation remedy available to him through an Article 78 proceeding in State court. *Id*. at 300. Upon reconsideration of the decision in 2009, Judge Townes noted that Maloney's claim based on his listing had become moot because he had received an administrative hearing before OCFS, which resulted in the amendment of the report against him, from "indicated" to "unfounded." *See Maloney*, 2009 WL 922064 at *1.[9] Maloney does not dispute any of the facts regarding the proceedings in *Maloney v. County of Nassau*.

Upon the District Attorney's filing of the brief to the Second Circuit containing the information about Maloney's listing in the Register, Maloney sought to have the brief retracted, first by requesting that the District Attorney voluntarily retract it and then by filing a motion before the Second Circuit to strike the District Attorney's brief. (Pl. 56.1, ¶¶ 5–6; Def. 56.1 at

---

police officers in to [sic] his home." (Dkt. 116–4 at ECF 6). OCFS thus changed the report against Maloney from "indicated" to "unfounded" and sealed the report. (*Id*. at ECF 7).

[9]  (*See also* Pl. 56.1, ¶ 8 (noting that OCFS's Bureau of Special Hearings issued a decision on September 22, 2008 amending the status of the report against Maloney from "indicated" to "unfounded" and sealing the report).

ECF 4 ¶ 5).  The Second Circuit denied Maloney's motion on November 19, 2008.  (Def. 56.1 at ECF 4 ¶ 5).

### C.    Proceedings on Remand

On October 24, 2013, the Court held a pre-motion conference and granted leave to the parties to file cross-motions for summary judgment on Maloney's Second Amendment claim and Section 1983 claim.  With respect to Count Two of the Second Amended Complaint, which asserts a challenge to the chuka stick ban under the Ninth and Fourteenth Amendments, the Court ruled that the *vacatur* of the prior judgment in this case did not disturb Judge Spatt's findings with respect to the Ninth and Fourteenth Amendments, and directed the parties not to re-argue the dismissal of Count Two.  (*See* Transcript, 10/24/2013 Hearing at 5).  Indeed, *McDonald* does not bear on Maloney's ability to challenge the chuka stick ban under those provisions, and so Judge Spatt's prior determination on those points continues to govern.[10] Thus, the Court formally dismisses Count Two of the Second Amended Complaint.[11]

---

[10]     Judge Spatt held that the Ninth Amendment could not provide Maloney with a basis for relief because it is only applicable against federal, not State, actors, and does not confer substantive rights.  *Maloney*, 470 F. Supp. 2d at 214.

[11]     Though Maloney did not initially brief any arguments on Count Two based on the Court's direction at the pre-motion conference, he maintains in his Reply that "*vacatur* is *vacatur*."  (Pl. Reply at ECF 8).  Contrary to Maloney's contention that the Court "tabled" the question of the viability of Count Two at the pre-motion conference (*id.*), the Court in fact determined that Count Two is not viable.  (*See* Transcript, 10/24/2013 Hearing at 5 ("COURT: I believe Judge Spatt has already ruled on the Ninth Amendment issue and the Fourteenth Amendment issue, as did the Second Circuit on the Fourteenth Amendment issue.  I do not perceive that the Supreme Court decision remanding the case altered either of those findings.")).

Notwithstanding the Court's direction at the pre-motion conference, the District Attorney has moved for summary judgment on Count Two of Maloney's Second Amended Complaint, stating that the Deputy County Attorney present at the pre-motion conference had no recollection of the exchange whereby the Court directed the parties only to brief Counts One and Three of the Second Amended Complaint.  The Court does not consider the District Attorney's arguments on this point.  (Def. Sur-Reply at ECF 4).

The Court now considers the parties' motions for summary judgment on Counts One (Second Amendment challenge to chuka stick ban) and Three (Section 1983 due process violation) of Maloney's Second Amended Complaint.

## II.   STANDARD OF REVIEW

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)*, 153 F.3d 61, 67 (2d Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee*, 109 F.3d at 134. Where both parties move for summary judgment, as Maloney and the District Attorney have done here, "each party's motion must be examined on its own merits, and . . . all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

The Court's inquiry upon summary judgment is "determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *see also id.* at 251–52 ("In essence, though, the inquiry . . .

[is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). The substantive law will determine which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. Disputed issues of law that present nothing for trial may be appropriately resolved on a motion for summary judgment. *See New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 990 F. Supp. 2d 349, 358 (W.D.N.Y. 2013) ("*NYSRPA v. Cuomo*") (citations omitted), *appeals filed*, Nos. 14–36, 14–37.

## III. DISCUSSION

### A. Standing To Seek Declaratory Relief

Maloney's constitutional challenge to New York's criminalization of chuka sticks seeks relief under the federal Declaratory Judgment Act. Though New York dismissed the criminal charge against Maloney, the Court finds that he has standing to seek declaratory relief.

As an initial matter, Judge Spatt previously determined that Maloney had standing to seek a declaratory judgment against New York's chuka stick ban because "[he] had already been arrested once under the allegedly unconstitutional statute, and intends to continue using nunchuka in his martial arts training, which he considers to be constitutionally protected activity." *See Maloney*, 470 F. Supp. 2d at 207. The Court does not view the *vacatur* of the district court judgment to have disturbed Maloney's standing to challenge New York Penal Law § 265.01. Furthermore, Maloney attests here that chuka sticks are "an integral part of [his] martial arts training and indeed of [his] home defense philosophy" (Maloney Decl., ¶ 6), which suggests that Maloney either continues to possess chuka sticks or intends to do so in the future. Maloney's declaration confirms that he is not simply relying on a past injury but presently risks

prosecution under Section § 265.01 for activity he believes to be protected under the Second Amendment. *See Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (finding a federal court may grant declaratory relief though no state prosecution is pending because otherwise the plaintiff is "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding."); *McCormick ex rel. McCormick v. School Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004) ("A plaintiff seeking . . . declaratory relief cannot rely on past injury to satisfy the injury requirement [of Article III standing] but must show a likelihood that he or she will be injured in the future.") (citing *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)). A substantial controversy therefore exists between the parties that is "of sufficient immediacy and reality" to potentially warrant the issuance of a judgment under the federal Declaratory Judgment Act. *See Duane Reade Inc. v. St. Paul Fire and Marine Ins. Co*., 411 F.3d 384, 388 (2d Cir. 2005).[12]

### B. Second Amendment Claim

#### 1. Applicable Law

##### a. *Heller* and *Heller II*

The Second Amendment of the U.S. Constitution provides: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Heller*, the Supreme Court found that the

---

[12]     Maloney's Second Amended Complaint also seeks a declaration against New York Penal Law § 265.02 ("Section 265.02"), which provides that a person is guilty of criminal possession of a weapon in the third degree upon committing the crime of criminal possession in the fourth degree, as defined in New York Penal Law § 265.01(1), and having been previously convicted of any crime. *See* New York Penal Law § 265.02. At this Court's pre-motion conference on October 24, 2013, Maloney conceded that he lacks standing to seek a declaratory judgment as to Section 265.02, and withdrew that claim. (*See* Transcript, 10/24/2013 Hearing at 8). Thus, Maloney's claim for declaratory relief as to Section 265.02 is dismissed.

Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. *McDonald* extended *Heller*'s principles to the States, and therefore we consider Maloney's Second Amendment claim within the framework announced by *Heller*, pursuant to the Supreme Court's instruction to the Court. *See McDonald v. Chicago*, 561 U.S. 742 (2010); *Maloney*, 561 U.S. 1040.

Though *Heller* recognized an individual right to "keep and bear arms," it provided that the right "was not unlimited." *Heller*, 554 U.S. at 595; *see also id.* ("[W]e do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*.") (emphasis in original); *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013), *cert. denied sub nom. Kwong v. de Blasio*, 134 S. Ct. 2696 (2014) (citing *Heller*, 554 U.S. at 595). Weapons that are "not typically possessed by law-abiding citizens for lawful purposes" do not fall within the Second Amendment's ambit. *Heller*, 554 U.S. at 625. The Supreme Court found this limitation to be "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (citations omitted).

In *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*"), the D.C. Circuit applied a two-step approach to determine the constitutionality of firearm regulations passed in the wake of *Heller*:[13] "We ask first whether a particular provision impinges upon a right protected by the Second Amendment; and if it does, then we go on to determine whether

---

[13] As the D.C. Circuit explained in *Heller II*, "[s]hortly after the Supreme Court issued its decision in [*Heller*], the D.C. Council passed emergency legislation in an effort to conform the District's laws to the Supreme Court's holding while it considered permanent legislation." 670 F.3d at 1248. In December 2008, the D.C. Council passed new firearm regulations that gave rise to the constitutional challenge in *Heller II*. *Id.*

11

the provision passes muster under the appropriate level of constitutional scrutiny." *Id*. at 1252

(citing cases); *see also United States v. Pruess*, 703 F.3d 242, 245 (4th Cir. 2012)

(applying two-part framework). "Extrapolating" from *Heller* and subsequent Second Circuit

decisions, the Western District of New York in *NYSRPA v. Cuomo* applied a "three-part

inquiry":

> First, [the court] must determine whether any of the regulated weapons or
> magazines are commonly used for lawful purposes. If any are, it must next
> determine if any of the challenged provisions of the SAFE Act[14] substantially
> burden a Second Amendment right. Finally, if any do, it must then decide what
> level of scrutiny to apply.

990 F. Supp. 2d at 362–63 (discussing *Heller*; *United States v. Decastro*, 682 F.3d 160 (2d Cir.

2012); and *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012)).

Thus, to determine whether New York's criminalization of the in-home possession of

chuka sticks burdens a Second Amendment right, the Court must first determine whether chuka

sticks constitute "arms" protected by the Second Amendment—namely, whether they are

commonly used for lawful purposes. If chuka sticks do not constitute arms protected by the

Second Amendment, then Maloney's challenge to the ban fails. *See*, *e.g.*, *Pruess*, 703 F.3d at

245 (explaining that if the challenged law does not impose a burden on conduct "falling within

the scope of the Second Amendment's guarantee," the law is valid). If they do, however, come

within the scope of the Second Amendment's protection, the Court must then determine how

substantially New York's ban burdens the exercise of Maloney's Second Amendment rights, in

---

14      On January 15, 2013, Governor Andrew Cuomo signed into law the New York Secure
Ammunition and Firearms Enforcement Act of 2013, or SAFE Act, which effected "broad and
varied changes to firearm regulation in New York State[,]" and "generally enhance[d] regulation
and increase[d] penalties for the illegal possession of firearms." *NYSRPA v. Cuomo*, 990 F.
Supp. 2d at 354.

order to determine the applicable level of scrutiny. *Kwong*, 723 F.3d at 167 (2d Cir. 2013) (citing *Decastro*, 682 F.3d at 164); *NYSRPA v. Cuomo*, 990 F. Supp. 2d at 365.

### b. "Commonly Used For Lawful Purposes"

The "commonly used for lawful purposes" test established in *Heller* contains an inherent ambiguity: does the test require *both* that the weapon at issue be "in common use" *and* that its common use be a lawful one, or simply that the weapon's common use be a lawful one? Post-*Heller* cases addressing handgun regulations have not focused on this question presumably because there is no doubt that handguns are in common use today in this country and that restrictions on them should be analyzed pursuant to Second Amendment jurisprudence. *See*, *e.g.*, *Kachalsky*, 71 F.3d at 93 (presuming that the Second Amendment applies to New York licensing scheme for carrying concealed handguns in public). However, in cases involving less ordinary weapons, such as semi-automatic rifles, assault weapons, handguns with obliterated serial numbers, and large-capacity magazines, the courts have suggested that "in common use" is a separate and distinct element of the *Heller* test. *See*, *e.g.*, *Heller II*, 670 F.3d 1260–61 (analyzing whether semi-automatic rifles and large-capacity magazines are in common use); *United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010) (in case involving handguns with obliterated serial numbers, observing that the Supreme Court in *Heller* "made clear that restrictions on the possession of dangerous and unusual weapons are not constitutionally suspect because these weapons are outside the ambit of the amendment.") (citing *Heller* 554 U.S. at 624–25); *NYSRPA v. Cuomo*, 990 F. Supp. 2d at 360 (in case involving assault weapons and large-capacity magazines, interpreting *Heller* to clarify that the Second Amendment only guarantees "the right to those weapons in 'common use at the time'—those weapons, that is, that a typical citizen would own and bring with him when called to service [in the militia].") (quoting *Heller*, 554

13

U.S. at 624 (quoting *Miller*, 307 U.S. at 179)); *see also Heller*, 554 U.S. at 624–25 (explaining the origins of the "commonly used for lawful purposes" test: "We therefore read [*United States v. Miller*, 307 U.S. 174 (1939)] to say only that the Second Amendment does not protect those weapons *not typically possessed* by law-abiding citizens for lawful purposes, such as short-barreled shotguns[]," and noting language from *Miller* that "ordinarily when called for [militia] service [abled-bodied] men were expected to appear bearing arms supplied by themselves and of the kind *in common use at the time*.") (quoting *Miller*, 307 U.S. at 179 (internal quotation marks omitted)) (emphasis added).

In *Heller II*, for example, the Court initially made a determination, based on manufacturing data, that "semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use,'" but ultimately found the evidence presented by the parties insufficient to determine whether "these weapons are commonly used or are useful specifically for self-defense or hunting and therefore whether the prohibitions of certain semi-automatic rifles and magazines holding more than ten rounds meaningfully affect the right to keep and bear arms." 670 F.3d at 1261. Similarly, in *NYSRPA v. Cuomo*, based on its holding that "[u]nder *Heller*, the Second Amendment does not apply to weapons that are not 'in common use at the time,'" the Western District of New York considered the parties' opposing evidence about the "popularity" of assault rifles and large-capacity magazines. 990 F. Supp. 2d at 363–64. The court, however, did not resolve this question, instead ruling that "ownership statistics alone [were] not enough" because the "firearm must also be possessed for lawful purposes." *Id*. at 364. The Court eventually assumed, for purposes of the decision, that the weapons at issue were

14

"commonly used for lawful purposes" and thus covered by the Second Amendment. *Id*. at 365.[15]

Guided by these decisions and in light of the Supreme Court's explanation that the test formulated in *Heller* is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and *unusual* weapons,'" *Heller*, 554 U.S. at 627 (emphasis added), the Court believes that there is a separate and distinct requirement that a weapon be "in common use at the time" in order to be protected by the Second Amendment. *See Heller*, 554 U.S. at 627 (explaining that weapons "in common use at the time" are protected by the Second Amendment). Thus, to reiterate, the weapon at issue must be "in common use" *and* its common use must be a lawful one.

Furthermore, the Court agrees with *NYSRPA v. Cuomo* and other decisions interpreting the time relevant to the "in common use at the time" element to mean those weapons in use today, rather than weapons only in existence at the time of ratification of the Second Amendment. 990 F. Supp. 2d at 360 ("The salient question for the *Heller* Court, then, was not what weapons were in common use during the revolutionary period, but what weapons are in common use *today*.") (emphasis added); *see also Heller II*, 670 F.3d at 1261 (noting the nationwide manufacture of the semi-automatic rifles at issue from 1986 to 2007); *Marzarella*, 614 F.3d at 93 (rejecting criminal defendant's contention that the relevant time for "in common use at the time" was ratification). Indeed, the Supreme Court's statement in *Heller* that the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding" would appear to make this reading

---

[15]     As in *NYSRPA v. Cuomo*, the Third Circuit in *Marzzarella* declined to decide whether the criminal defendant's right to bear arms had been infringed and simply assumed it, based on its findings that the evidence on whether possession of unmarked firearms in the home is covered by the Second Amendment was inconclusive and that the restriction at issue passed "constitutional muster even if it burdens protected conduct." 614 F.3d at 95.

incontrovertible.  *Heller*, 554 U.S. at 582.  Thus, the Court interprets the time relevant to "in common use at the time" to mean weapons in common use today.[16]

### c.    Level Of Scrutiny For Second Amendment Challenges

As the Southern District of New York recently found, a majority of courts have applied "intermediate scrutiny to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of [weapons] in the home."  *See New York State Rifle & Pistol Ass'n v. City of New York*, No. 13 CV 2115, 2015 WL 500172, at *7 (S.D.N.Y. Feb. 5, 2015), *appeal filed*, No. 15-638 (applying intermediate scrutiny to New York City law restricting the transportation of handguns covered by residence licenses beyond the premises of the licensed residence); *see also Kachalsky*, 701 F.3d at 93 (applying intermediate scrutiny to New York licensing scheme for carrying concealed handguns in public); *United States v. Reese*, 27 F.3d 792, 800 (10th Cir. 2010), *cert. denied,* 131 S.Ct. 2476 (2011) (applying intermediate scrutiny to federal statute prohibiting an individual's possession of gun—even in the home—when subject to a protective order as opposed to a criminal conviction); *United States v. Skoien,* 614 F.3d 638, 641–42 (7th Cir. 2010) (*en banc*) (applying intermediate scrutiny to federal statute prohibiting the possession of firearms by any person convicted of a misdemeanor domestic violence crime); *United States v. Chester,* 628 F.3d 673, 677 (4th Cir. 2010) (same as *Skoien*); *Marzzarella,* 614 F.3d at 97 (applying intermediate scrutiny to law limiting possession

---

[16]    The Court acknowledges, but disagrees with, those courts that have read "in common use at the time" to apply only to those weapons that were used by the militia at the time of the country's founding.  *See, e.g.*, *Pruess*, 703 F.3d at 246 n.2 (interpreting "in common use at the time" to be at the time of ratification); *Mack v. United States*, 6 A.3D 1224, 1235 (D.C. 2010) (finding that it was not "'clear' or 'obvious' that the Second Amendment secures the right of the people 'to keep and bear' ice picks" where plaintiff failed to provide any "convincing historical analysis demonstrating [ice picks'] suitability for use in the militia").

of firearms with obliterated serial numbers because the law did not "severely limit the possession of firearms"); *United States. v. Oppedisano,* 09–CR–0305, 2010 WL 4961663, at *2 (E.D.N.Y. Nov. 30, 2010) (applying intermediate scrutiny to challenge to federal statute prohibiting persons convicted of certain crimes from possessing firearms); *NYSRPA v. Cuomo,* 990 F. Supp. 2d at 366-67 (applying intermediate scrutiny to SAFE Act and concluding that a "mild form of intermediate scrutiny" applies to restrictions posing "only modest burdens" on the right to possess firearms) (quoting *Heller II*, 670 F.3d at 1262)).[17]

### 2.    There Is Insufficient Evidence On Whether Chuka Sticks Are Protected Under The Second Amendment

The parties do not dispute the fact that chuka sticks are weapons.  Indeed, New York law defines them as such.  *See* N.Y. Penal Law § 265.00(14) ("'Chuka stick' means any device designed primarily as a weapon . . .").  However, the parties vigorously dispute whether chuka sticks are "in common use" for "lawful purposes" and thus eligible for protection under the Second Amendment.  *Heller*, 554 U.S. at 624.  These are fundamentally empirical questions.

Maloney argues that chuka sticks are "typically possessed by law-abiding citizens for lawful purposes."  Maloney attests that chuka sticks are "an integral part of [his] martial arts

---

[17]    The cited cases concerned firearms, not chuka sticks, and restrictions, but not bans, on the possession and use of certain firearms.  These distinctions could be relevant in determining how substantially Section 265.01 burdens Maloney's exercise of his Second Amendment rights and thus the appropriate level of scrutiny to apply.  Section 265.01 bans the possession of nunchaku anywhere and for any purpose, bringing it closer to the handgun ban struck down in *Heller.  See Decastro*, 682 F.3d at 165–66 (distinguishing between the restrictions at issue in that case, which did not preclude ownership or possession of firearms, and the handgun ban struck down in *Heller*) (quoting *Heller*, 554 U.S. at 629 ("Few laws in the history of our Nation have come close to the restriction of the District's handgun ban.")).  At the same time, however, unlike handguns, nunchaku are not considered "the quintessential self-defense weapon," by "the American people," *Heller*, 554 U.S. at 629, and thus a ban on their possession arguably does not impose nearly the same burden as a handgun ban on the Second Amendment right to bear arms for the purpose of self-defense.  The Court defers the resolution of this issue until after the parties have submitted additional evidence on the use of nunchaku in this country, as discussed *infra*.

training and indeed of [his] home defense philosophy." (Maloney Decl., ¶ 6). Self-defense of the home clearly constitutes a "lawful purpose" under *Heller*. *See McDonald*, 561 U.S. at 767 ("Self-defense is a basic right, recognized by many legal systems from ancient times to the present, and in *Heller,* we held that individual self-defense is 'the *central component*' of the Second Amendment right.") (emphasis in original); *Kachalsky*, 701 F.3d at 89 (stating "Second Amendment guarantees are at their zenith within the home"). However, Maloney's personal experience is just one data point and does not, on its own, establish that chuka sticks are "in common use today" or that their common use is for the "lawful purpose" of self-defense.

In an attempt to establish that chuka sticks are "typically possessed by law-abiding citizens for lawful purposes," Maloney points to the legislative history of New York's ban as well as judicial decisions opining on the use of chuka sticks. Maloney cites an April 4, 1974 memorandum from New York's Division of Criminal Justice Services opposing the criminalization of chuka sticks, acknowledging that chuka sticks are used in martial arts training, and stating that "many members of the public" participate in such activities. (Pl. Memo at ECF 6–7; *see also* Dkt. 116-2). Maloney also cites to a 1982 decision by the Supreme Court of Hawaii stating that "nunchaku sticks are widely used in the martial arts,"[18] a 1983 decision by the District of Columbia Court of Appeals recognizing that "the nunchaku has socially acceptable uses within the context of martial arts,"[19] and a 1984 decision by the Ohio Court of Appeals finding that the record established that the chuka sticks at issue were "used only for

---

[18]    *State v. Muliufi*, 64 Haw. 485, 489 (Haw. 1982) (determining that nunchaku are not deadly or dangerous weapons).

[19]    *In re S.P.*, 465 A.2d 823, 827 (D.C. 1983) (upholding defendant's conviction under the dangerous weapons statute based on his carrying and twirling nunchaku in a crowd).

lawful purposes."[20]   Finally, Maloney points out that Judge Spatt, in his 2007 opinion, recognized that "the martial arts generally, and perhaps use of the nunchaku in particular, have a rich history and are culturally significant to many people in many parts of the world."  *Maloney*, 470 F. Supp. 2d at 213.

In contrast, the District Attorney argues that chuka sticks are not "'in common use,' inasmuch as it is clear that only a small subset of the population even attempts to use nunchaku for martial arts related purposes."  (Def. Opp. at ECF 6).  However, the District Attorney fails to back this claim with any evidentiary support.  Instead, the District Attorney argues that nunchaku are "dangerous and unusual weapon[s] which [are] not typically possessed by law-abiding citizens for lawful purposes."  (Def. Opp. at ECF 6).  In an attempt to establish that nunchaku are "dangerous and unusual," and therefore not protected by the Second Amendment, the District Attorney points to a handful of cases from across the country, spanning 24 years, where nunchaku were used to commit violent crimes.  (*Id.* (citing four news articles describing the use of nunchaku in violent crimes)).  The District Attorney also points out that the District of Columbia case cited by Maloney, *In re S.P., Jr.*, actually upheld the defendant's conviction for possession of nunchaku as a dangerous weapon, despite its recognition that nunchaku are used in the martial arts.  *See* 465 A.2d at 827.  She also cites to a 1986 decision by the District Court of Appeal in Florida and a 1985 decision from the Court of Appeals in Iowa finding that nunchaku constituted dangerous and deadly weapons.  *See R.V. v. State*, 497 So.2d 912 (Fla. Dist. Ct. App. 1986); *State v. Mitchell*, 371 N.W.2d 432 (Iowa Ct. App. 1985).  And in opposition to the

---

[20]    *State v. Maloney*, 470 N.E.2d 210, 211 (1984) (overturning conviction because defendant had merely possessed nunchaku, "an otherwise lawful article" under the circumstances presented).

Division of Criminal Justice Services memorandum offered by Maloney, the District Attorney points to sources of legislative history suggesting that New York legislators viewed nunchaku as dangerous weapons. (Def. Opp. at ECF 9).[21]

The Court does not find the evidence offered by the parties to be so persuasive as to warrant a grant of summary judgment to either side. Both sides have offered little more than anecdotal evidence, which leaves the Court ill-equipped to determine whether the examples offered are representative or atypical. Indeed, neither party has advanced any empirical support that would allow the Court to conclude that chuka sticks are or are not "in common use today" and that they are used for "lawful purposes." While courts in firearms cases have recognized that "reliable empirical evidence" establishing the purposes for which the weapons at issue were used may prove to be "elusive," the parties in those cases at least made attempts to marshal statistics to demonstrate that the weapons at issue were "in common use." In *Heller II*, the District of Columbia Circuit found that the record clearly established that the weapons at issue were "in common use," based, in part, on manufacturing statistics dating from 1986. 670 F.3d at 1261. In *NYSRPA v. Cuomo*, the parties both provided statistics on the ownership of assault weapons, providing a basis for the district court to assume that the weapons at issue were "commonly used for lawful purposes." 990 F. Supp. 2d at 365. Here, however, neither Maloney nor the District Attorney have made any attempt to offer ownership statistics or expert testimony

---

[21] The sources of legislative history cited by the District Attorney are (1) an April 8, 1974 memorandum from the then-Attorney General noting that nunchaku have "apparently been widely used by muggers and street gangs"; (2) an April 1, 1974 letter from the Legislative Secretary of the District Attorneys Association of the State of New York to the Counsel to Governor Wilson noting that "[a]s a result of the recent popularity of 'Kung Fu movies and shows, various circles of the state's young are using" nunchaku, which "can kill"; (3) an April 2, 1974 letter from Assemblyman Richard C. Ross stating that nunchaku may be used "as a garrote, bludgeon, thrusting or striking device"; and (4) an April 1, 1974 letter from the District Attorney of Dutchess County noting that nunchaku are used "in the same manner and with a frequency that now approximates other per se contraband weapons[.]" (*See* Def. Opp. at ECF 9–10).

as to whether chuka sticks are "in common use" for lawful purposes or are otherwise "dangerous and unusual."

On the thin evidentiary record currently before the Court, the Court is unable to find that the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. Neither Maloney nor the District Attorney has shown an absence of disputed issues of material fact with respect to the critical threshold question of whether chuka sticks are or are not protected by the Second Amendment. The Court thus denies summary judgment to both Maloney and the District Attorney with respect to Maloney's Second Amendment claim.[22] At trial, the parties should be prepared to offer a more robust factual record through the use of statistics and/or expert testimony.[23]

### 3. Section 1983 Claim

#### a. Applicable Law

Count Three of Maloney's Second Amended Complaint asserts a due process violation based on the District Attorney's "disclosure," in a brief to the Second Circuit, that he was listed

---

[22] Maloney also offers evidence that nunchaku have "historically had a reasonable relationship to a citizens' militia" based on their use by Okinawans in the early 17th century to resist occupation by the Japanese. (Pl. 56.1, ¶ 3). The District Attorney agrees that nunchaku were used as a weapon by Okinawans in the 17th century (Def. 56.1, ¶ 3), but disputes the legal relevance of this fact. Though *Heller* opined that the purpose of the Second Amendment was to prevent elimination of the militia, 554 U.S. at 599, it does not limit the Second Amendment's scope to only those weapons with a connection to the militia. Thus, the Court finds the fact of nunchaku's historical connection with the Okinawan militia to have little relevance to its task of determining whether nunchaku are "in common use" today for lawful purposes.

[23] Given the equitable nature of the relief sought by Maloney, the Court anticipates that the parties will proceed with a bench trial. *See Pereira v. Farace*, 413 F.3d 330, 337 (2d Cir. 2005) (applying two-step test from *Granfinanciera, S.A. v. Nordberg*, 592 U.S. 33, 42 (1989) to determine whether a particular action triggers the right to trial by jury, asking first whether the action "would have been deemed legal or equitable in 18th century England," then examining the remedy sought and "whether it is legal or equitable in nature," and finally "balanc[ing] the two, giving greater weight to the latter.").

on the New York State Child Abuse and Maltreatment Register.  Maloney's due process claim is premised on the harm to his reputation from the District Attorney's dissemination of the fact that he was the subject of an investigation for possible child abuse.  Because the liberty interest he asserts is tied to his reputation, he concedes that "stigma plus" is the applicable standard for analyzing his claim.  (Pl. Memo at ECF 19); *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

"It is axiomatic that a 'person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983.'"  *Prince v. County of Nassau*, 837 F. Supp. 2d 71, 97 (E.D.N.Y. 2011) *aff'd*, 563 F. App'x 13 (2d Cir. 2014) (citing *Patterson*, 370 F.3d at 329–30 (further citation omitted)).  Ordinarily, a claim based solely on a plaintiff's loss of reputation must be brought as a state defamation claim, and cannot form the basis of a Section 1983 claim.  *Prince*, 837 F. Supp. 2d at 97 (citing *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)).  However, a plaintiff may assert a Section 1983 due process claim based on reputational harm if his injury is coupled with the deprivation of a more tangible interest; such claims are known as "stigma plus" claims.  *See Patterson*, 370 F.3d at 330; *Sadallah*, 383 F.3d at 38.

"To succeed on a stigma plus claim, 'a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'"  *Prince*, 837 F. Supp. 2d at 97 (citing *Sadallah*, 383 F.3d at 38).  Failure to establish that the statement at issue is "capable of being proved false" requires dismissal of the plaintiff's claim.  *See Prince*, 837 F. Supp. 2d at 97–98 (dismissing

22

plaintiff's "stigma plus" claim where the statements at issue could not be characterized as "false, reputation-tarnishing statement[s] sufficient to support" his claim).

### b. Maloney's "Stigma Plus" Claim Fails

The Court grants summary judgment to the District Attorney on Count Three because Maloney cannot establish the first element of his "stigma plus" claim as a matter of law. It is undisputed that the District Attorney's statement in her Second Circuit brief regarding Maloney's listing on the Register was a true statement at the time the brief was filed.[24] The factual accuracy of the "disclosure" made by the District Attorney is thus fatal to his claim. *See Prince*, 837 F. Supp. 2d at 98; *see also Vega v. Lantz*, 596 F.3d 77, 82 (2d Cir. 2010) (finding plaintiff, who contested his classification as a sex offender, was not entitled to relief on his "stigma plus" claim because plaintiff failed to establish "a threshold requirement—the existence of a reputation-tarnishing statement that is *false*." (emphasis in original)).

Maloney's inability to establish the threshold requirement of a "stigma plus" claim is further bolstered by the fact that the District Attorney's "disclosure" resulted from the citation to a publicly issued district court opinion in a case that Maloney himself filed, where he alleged a due process violation based on his listing on the Register. (*See* Dkt. 102-1 at ECF 11 ("In addition, since Plaintiff's infant sons had been in the home at the time of the incident, Office of Child and Family Services investigated, concluded that the incident 'indicated' maltreatment of his sons, [sic] and Plaintiff was listed on the New York State Child Abuse and Maltreatment Register." (citing *Maloney*, No. 03 CV 4178))). As the District Attorney points out, Maloney's own complaint in *Maloney v. County of Nassau* stated that he had been investigated and that "said investigation was deemed 'Indicated,' which creates a permanent record . . . indicating that

---

[24]     As noted in Section I.B, *supra*, District Attorney Rice filed the brief on October 25, 2007, and the report against Maloney was not amended until September 22, 2008.

Plaintiff has been investigated for possible child abuse." (Def. 56.1 at ECF 3 ¶ 1 (citing Verified Complaint at ¶¶ 32–33, *Maloney*, No. 03 CV 4178)). In ruling on the defendants' motion to dismiss, Judge Townes' opinion in *Maloney v. County of Nassau* recounted Maloney's own allegation regarding his listing on the Register. *See* 623 F. Supp. 2d at 283

Unable to overcome the factual nature of the "disclosure" at issue, Maloney attempts to distinguish his own disclosure of the listing in his complaint from the District Attorney's citation of this fact "to advance one's own position in a civil matter" at the expense of "ruining [his] good name." (Pl. Reply at ECF 13). Maloney fails to demonstrate how any such distinction is legally cognizable within the "stigma plus" framework.

While the Court recognizes that the seven-year delay between Maloney's initial listing on the Register and the eventual amendment was egregiously long,[25] it still finds that Maloney cannot find vindication through the due process claim pled here. As Judge Townes noted in her opinion, Maloney had a meaningful post-deprivation remedy through an Article 78 proceeding in State court. *Maloney*, 623 F. Supp. 2d at 300. Maloney's decision to forego an Article 78 action and instead pursue a "stigma plus" claim in this Court leaves him without a remedy.[26]

Having found that Maloney's due process claim fails because of the factual nature and accuracy of the "disclosure" by the District Attorney, the Court declines to address the District Attorney's remaining arguments as to qualified immunity and collateral estoppel.

---

[25]     *See supra* note 8 regarding Maloney's listing on the register.

[26]     As Maloney acknowledges, Judge Spatt rejected Maloney's attempt to assert a direct challenge to his listing on the Register through a private cause of action based on New York Social Services Law § 422(12), because Maloney had never filed a Notice of Claim. (Pl. Reply at ECF 10–11). Thus, the Court notes that Maloney's addition of this due process claim following remand of this case was an inappropriate attempt to revisit and end-run the decisions already reached on this issue by Judge Townes in *Maloney v. County of Nassau* and Judge Spatt in this action.

The Court thus grants summary judgment to the District Attorney on Count Three of Maloney's Second Amended Complaint.

## IV.    CONCLUSION

The Court denies summary judgment to both parties on Count One of the Second Amended Complaint challenging New York Penal Law § 265.01 as a violation of the Second Amendment.  This claim shall proceed to trial.  The parties shall file a proposed joint pre-trial order within forty-five (45) days of the date of this Order.

The Court grants summary judgment to the District Attorney on Count Three of the Second Amended Complaint (§ 1983 Claim). Maloney's request for declaratory relief as to New York Penal Law § 265.02 is dismissed from this action for lack of standing.  The Court also dismisses Count Two of the Second Amended Complaint (Ninth and Fourteenth Amendment challenge to the chuka stick ban) for the reasons stated on the record during the October 24, 2013 pre-motion conference.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 22, 2015
        Brooklyn, New York

25